[Civ. No. 24714. Fourth Dist., Div. One. Mar. 24, 1982.]

GREGORY KRUEGER, Plaintiff, Cross-defendant and Respondent, v.
CITY OF ANAHEIM, Defendant, Cross-complainant and Appellant.

**COUNSEL**

William P. Hopkins, City Attorney, Louis L. Shelby, Deputy City Attorney, and Ruston & Nance for Defendant, Cross-complainant and Appellant.

Rigg & Dean and David A. Sprowl for Plaintiff, Cross-defendant and Respondent.

OPINION

COLOGNE, J.—Gregory Krueger brought this action for injuries allegedly received during his encounter with stadium guards working for the City of Anaheim. The guard, William Rafter, and the city seeking reimbursement for its workers' compensation payments, cross-complained for damages. Rafter dismissed his action. Summary judgment was granted in favor of Krueger on the cross-complaint of the city and it appeals.

On April 27, 1979, while attending a California Angels baseball game in Anaheim Stadium, Krueger left the stands between innings and ran across the baseball field. He scaled one of the outfield fences and was in the process of climbing a second fence when he was apprehended by the stadium security guards. A struggle ensued. Krueger sustained a broken tibia and Rafter sustained a broken blood vessel in his leg. The city's cross-complaint alleges it is under a self-insured workers' compensation program for its employees and was obliged to pay for Rafter's medical treatment as a result of the "negligence, carelessness and unlawful conduct" of Krueger. In a second cause of action, it alleges Krueger assaulted and battered Rafter by pushing, kicking, striking and otherwise abusing him.

The motion by Krueger for summary dismissal of the cross-complaint was based on the theory the "fireman's rule" prevents recovery for any of Rafter's injuries. Because we believe the "fireman's rule" was misapplied regarding the facts alleged here, we reverse.

■ The fireman's rule provides that negligence in causing a fire furnishes no basis for liability to a professional fireman injured while fighting a fire. Firemen, "whose occupation by its very nature exposes them to particular risks of harm, '"cannot complain of negligence in the creation of the very occasion for [their] engagement"'" (*Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 369 [99 Cal.Rptr. 29, 491 P.2d 821]). While denominated the fireman's rule, the rule is applicable to policeman as well (*Walters* v. *Sloan* (1977) 20 Cal.3d 199, 202 [142 Cal.Rptr. 152, 571 P.2d 609]; *Giorgi* v. *Pacific Gas & Elec. Co.* (1968)

266 Cal.App.2d 355, 357 [72 Cal.Rptr. 119]). The rule is not based on modern concepts of tort liability developed in *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], but rather, on the public policy principle that one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby (*Walters v. Sloan, supra*, 20 Cal.3d 199, 204-206; *Hubbard v. Boelt* (1980) 28 Cal.3d 480, 484 [169 Cal.Rptr. 106, 620 P.2d 156]).

The conduct to which the rule speaks involves not only negligent but also wilful and wanton misconduct giving rise to the presence of the fireman or policeman (*Hubbard v. Boelt, supra*, 28 Cal.3d 480, at p. 485; *Holden v. Chunestudey* (1980) 101 Cal.App.3d 959, 961-962 [161 Cal.Rptr. 925]). ■ Here, however, we have allegations of an intentional tort directed specifically against the public employee in the nature of an assault or battery, intended to interfere with or prevent the performance of such employees' general duties and occurring after the incident giving rise to the officer's presence at the scene. These factors distinguish the present case from those previously applying the fireman's rule.

In *Walters v. Sloan, supra*, 20 Cal.3d 199, the court was presented with a personal injury action for negligence against parents who allegedly permitted their daughter to host a party where alcoholic beverages were consumed by minors. One of the guests became drunk and disorderly and the police were called. A struggle followed between the drunken minor and the policeman. The officer was injured. The court, applying the fireman's rule, said the policeman had no cause of action against the parents for their negligence which brought the officers to their house. The opinion, however, specifically left untouched the action by the policeman against the minor who intentionally struck the officer (20 Cal.3d at p. 202, fn. 1). *Hubbard v. Boelt, supra*, 28 Cal.3d 480, dealt with an officer chasing a speeding driver and injured when the officer lost control of his vehicle after hitting debris in the road. The court found the fireman's rule barred the officer from recovering from the speeder whose reckless conduct prompted the chase. The court was more pointed in making a distinction for intentional assaults. After stating the reasons why the fireman's rule extends to both negligent and reckless conduct, the court said "[w]e are not concerned with a claim for intentionally inflicted injuries to firemen or policemen" (28 Cal.3d 480, at p. 485). The same disassociation was expressed by the court in *Scott v. E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190, 1199 [91 Cal.Rptr. 232].

In *Kocan* v. *Garino* (1980) 107 Cal.App.3d 291 [165 Cal.Rptr. 712], an officer chasing a felony suspect was injured by the collapse of a fence which the property owner defendant had allowed to fall into disrepair and remain in an unsafe condition. Rejecting application of the fireman's rule, the court noted: "Respondent's [defendant's] negligence, if such there were, in no wise created the risk which was the cause of appellant's presence on the property nor could it have provided, within the ambit of the fireman's rule, any occasion for appellant's engagement at the time, which was instead a result of wholly independent factors not involving respondent." (107 Cal.App.3d at pp. 295-296.)

It is thus readily apparent the case law intends a distinction between the kind of conduct which brings the fireman or policeman to the scene in the first instance and the injury suffered by the officer from independent causes which may follow. *Walters* v. *Sloan, supra,* 20 Cal.3d 199, recognizes this principle in the abstract, stating "[T]hus a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain action against the speeder but the rule bars recovery against the owner of the parked car for negligent parking." (*Walters* v. *Sloan, supra,* 20 Cal.3d 199, 202, fn. 2; *Hubbard* v. *Boelt, supra,* 28 Cal.3d 480 at p. 486, citing this passage with favor.)

In *Hubbard* v. *Boelt, supra,* 28 Cal.3d 480, at page 486, the court, quoting from *Walters* v. *Sloan, supra,* 20 Cal.3d 199, pointed out the enforcement of a criminal statute "causes policemen to confront persons violating the statute, thereby imposing a confrontation and risk to the officer where none existed before . . . (20 Cal.3d at p. 207)." This is not to suggest, however, the police officer must expect to be assaulted when he is called to the scene of a crime, and must accept without recourse the injuries intentionally visited upon him as he attempts to do his job. We find no reason for a public policy supporting the officer's assumption of that sort of intentional abuse directed specifically and independently at him. An assault of this nature is a separate and different criminal act arising after the offense which occasions the officer's presence, the disorderly conduct of running across the playing field and scaling fences during the course of a sports event (see, e.g., Pen. Code, §§ 241, 243, 245).[1] It cannot be said such intentional conduct created the occasion for the officer's engagement (see *Walters* v. *Sloan, supra,*

---

[1] We could see a distinction, for example, in the case of a police officer who is called to the scene of a riot where fighting exists between rival groups and in attempting to quell the forces, is unintentionally struck by a flying object thrown by one of the participants.

20 Cal.3d 199, 202). ▪ The assumption of risk which the officer must face based on the public policy circumscribed in *Walters* v. *Sloan, supra,* 20 Cal.3d 199, at pages 205 to 206, was not intended to be so all inclusive as to encompass intentional torts directed against the fireman or officer while trying to perform his duties after he has been called to the scene of a law violator. To permit this would be to countenance unlimited violence directed at the policeman in the course of most routine duties. Certainly the policeman and his employer should have some private recourse for injuries so blatantly and criminally inflicted.

The reason underlying the fireman's rule is the fundamental principle that a person who, fully aware of the hazard created by the defendant's negligence, voluntarily confronts the risk for compensation cannot recover for injuries sustained thereby (*Walters* v. *Sloan, supra,* 20 Cal.3d 199, at p. 204). The New Jersey Supreme Court provides the foundation for the public policy in the oft-quoted *Krauth* v. *Geller* (1960) 31 N.J. 270 [157 A.2d 129, at page 131]: "[I]t is the fireman's business to deal with that very hazard [the fire] and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling." (Quoted with approval in *Walters* v. *Sloan, supra,* 20 Cal.3d 199, at p. 205.) Under this analysis, the public should assume responsibility only for the negligence which occasions the public employee to do his job quelling the blaze. *Krauth* v. *Geller, supra,* does not suggest, for example, the arsonist who intentionally tries to block the fireman's efforts to put out the blaze should be free from liability for injuries resulting to the fireman in that effort. The ordinary risk of fighting a fire is one thing, but we find it impossible to hold the fireman is forced to assume the unusual risk that in fighting a fire someone would intentionally injure him so he could not perform his normal duties. Surely society is not as callous as to preclude recovery for this type of conduct which can be identified as separate and criminal, apart from

the setting of the fire itself (see Pen. Code, §§ 148.2, 241, subd. (b), 243, subds. (b)-(e), 245, subd. (b)).

The policeman obviously poses a more difficult problem for his work involves criminals whose behavior is often violent, but if the public policy has as its foundation the same reason, the rule should be the same. We believe the person who intentionally interferes with the fireman or policeman in the performance of his duties should be liable for the injuries that person may cause because this risk is not one which the public employee necessarily assumes. The officer present at the scene to protect life or property or to prevent the public's interference with an ongoing ballgame does not have to assume the risk of a separate and later criminal act of an assault or battery to him while he is in performance of those duties. Such criminal activity directed to the officer is not part of "the very risk which occasioned his presence at the ... scene" (*Hubbard* v. *Boelt, supra*, 28 Cal.3d 480, 486-487).

██ Here the guard, a security officer in the employ of the city, was called upon to prevent an interference with the ballgame then in progress. He was called upon to eject a fan who was running through the playing area. The objective was not only to permit the game to continue but also to secure the safety of the public and the ball players using that area. The risk this guard would reasonably assume does not encompass the intentional battery which followed. Under those conditions, the officer and the city, which is required to provide him worker's compensation and disability compensation, should not be barred by an assumption of risk doctrine or fireman's rule but be able to recover the damages sustained.

The failure to exercise due care giving rise to a cause of action in negligence may be presumed where the act is a violation of a statute designed to protect the class of persons injured and the act proximately causes the injury (Evid. Code, § 669). *Walters* v. *Sloan, supra,* 20 Cal.3d 199, at pages 206 and 207, negated the application of this presumption as the basis for finding liability. There the statute proscribed serving liquor to persons under 21 (Bus. & Prof. Code, § 25658). *Hubbard* v. *Boelt, supra,* 28 Cal.3d 480, involved a violation of the basic vehicular speed limits and reckless driving. In both cases, however, the court found the criminal statute was not designed to protect the *policeman* from injury while investigating or terminating the prohibited conduct, but rather was designed to protect the general public, the court saying: "Ordinarily, a criminal statute is enacted not to protect

policemen from injury while investigating or terminating the prohibited conduct but rather to protect the public. Enforcement of any criminal statute causes policemen to confront persons violating the statute, thereby imposing a confrontation and risk to the officer where none existed before. An officer called to enforce a criminal statute is thus not one of the class of persons for whose protection the criminal statute is adopted.

"The negligence causing injury alleged against defendant Sloan is furnishing alcoholic beverages to persons under 21 resulting in their becoming drunk. The same negligence occasioned summoning the police." (*Walters* v. *Sloan, supra,* 20 Cal.3d 199, 207.)

On the other hand, the intentional assault or battery on a *peace officer* (Pen. Code, § 241), or battery *on a peace officer* (Pen. Code, § 243), or resisting *an officer* in the performance of his duties (Pen. Code, § 148), are statutes clearly directed to protect the officer, and the legislative protection thus provided calls for a public policy which would come to the aid of the officer. The Legislature has clearly provided a basis for imposing liability, i.e., the violation of those statutes protecting the police officer constitutes a breach of duty giving rise to a cause of action and calling for relief by way of damages.

Under the facts of this case, the city seeking reimbursement for injuries it was required to pay for as a result of Krueger's alleged acts has a cause of action for its damage and is not barred by the fireman's rule.

Summary judgment on the cross-complaint is reversed.

Brown (Gerald), P. J., and Staniforth, J., concurred.