JOHN BERKO, PLAINTIFF-APPELLANT, v. RALPH FREDA,
DEFENDANT-RESPONDENT, AND PAUL
HARRIGAN, DEFENDANT.

Argued October 12, 1982—Decided May 9, 1983.

*Stanley W. Greenfield* argued the cause for appellant (*Stanley W. Greenfield, Douglas C. Greenfield,* attorneys).

*Daniel K. Van Dorn* argued the cause for respondent (*McDermott, McGee & Ruprecht,* attorneys; *Francis J. Manion,* on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

In *Krauth v. Geller,* 31 *N.J.* 270 (1960), this Court adopted the so-called "fireman's rule," applicable in tort cases. That rule holds that because it is a firefighter's business to deal with the

usual hazards involved in fighting fires, a firefighter "cannot complain of negligence in the creation of the very occasion for his engagement." *Krauth, supra,* 31 *N.J.* at 273–74. The effect of the rule is to insulate one whose negligence causes a fire from liability for injuries sustained by a firefighter while extinguishing the blaze.

The specific question before us is whether the "fireman's rule," now a fixture in our jurisprudence, see, *e.g., Walsh v. Madison Park Properties, Inc.,* 102 *N.J.Super.* 134, 138 (App.Div. 1968), should be extended to police officers. The trial court applied the rule as against the plaintiff-policeman and entered summary judgment in favor of defendant Freda. *Berko v. Freda,* 172 *N.J.Super.* 436 (Law Div.1980). The Appellate Division affirmed. *Berko v. Freda,* 182 *N.J.Super.* 396 (1982). We granted plaintiff's petition for certification, 89 *N.J.* 446 (1982), and now affirm.

I

On December 18, 1976 defendant Freda parked a Cadillac automobile in a supermarket parking lot on Newark Avenue in Elizabeth. He left the keys in the ignition. Defendant Harrigan and another juvenile stole the car. At about 7:00 p.m. that same day plaintiff, John Berko, and a fellow police officer, having earlier been informed of the reported theft, spotted the juveniles in the stolen car. They pursued it and, after a perilous high-speed chase, eventually brought it to a halt. While Officer Berko was attempting to remove Harrigan from the car through the open door on the driver's side, Harrigan's foot hit the gas pedal. Berko was dragged forward by the car and suffered injuries. He brought suit against Freda and Harrigan, alleging that Freda was negligent in parking the vehicle with the keys in the ignition and that Harrigan was negligent in his operation of the stolen car.

The trial court granted summary judgment in favor of defendant Freda on two grounds: the intervening conduct by

Harrigan was not foreseeable, 172 *N.J.Super.* at 439, and the "fireman's rule" was applicable to police officers and precluded recovery, *id.* at 442. The Appellate Division's affirmance was solely on the ground that the "fireman's rule applies to a policeman in the context of this case * * *." 182 *N.J.Super.* at 396–97. Plaintiff challenges that determination, asserting that the "fireman's rule" has no justification in today's society, and in any event it should not be extended to include policemen. His argument is three-pronged: (1) the prevalence of liability insurance is a recent development having great impact on the present-day viability of the *Krauth* decision; (2) the "fireman's rule" is unsound because it relies on the tort doctrine of assumption of risk; and (3) it "makes no sense" to bar a fireman from instituting a third-party action while allowing other members of the public work force to maintain such actions.

■ The first of the above-stated contentions does not call for comprehensive treatment. To the extent that it suggests that homeowner's coverage is of recent vintage, it lacks support in the record and is contrary to our understanding of the true state of affairs. To the extent that it implies that the *Krauth* Court was unmindful of the role of liability insurance in the development of our tort law, it is wholly inaccurate. See *Eule v. Eule Motor Sales,* 34 *N.J.* 537, 540 (1961); *Hastings v. Hastings,* 33 *N.J.* 247, 253–54 (1960) (Jacobs, J., dissenting).

As to plaintiff's remaining contentions, we likewise reject them and hold that as to a defendant in the position of Freda in this case, the "fireman's rule" bars suit for an act of ordinary negligence that creates the occasion for the presence of a firefighter or a police officer at the place where he is injured.

## II

*Krauth v. Geller, supra,* held that a fireman may not recover from an owner or occupier of land for negligence with respect to the creation of the fire on that property. Until today's challenge by the dissent the respectability of this rule has remained

unquestioned in New Jersey for more than two decades. It is well-established, being generally followed throughout the United States. See *Trainor v. Santana,* 86 *N.J.* 403, 406 (1981). Although the "fireman's rule" developed within the context of landowner liability, 2 F. Harper & F. James, *The Law of Torts* § 27.14 at 1501 (1956), it is clear that the formalistic classification of invitees, licensees and trespassers no longer forms the basis of the rule. Chief Justice Weintraub wrote in *Krauth:*

> The rationale of the prevailing rule is sometimes stated in terms of "assumption of risk," used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling. [31 *N.J.* at 273–74 (citations omitted).]

This doctrine speaks only to the negligence that started the fire. Case law draws a distinction between injuries stemming from the negligence that brought the firefighters or police to the scene in the first place and injuries suffered from independent causes that may follow. *Krueger v. City of Anaheim,* 130 *Cal.App.*3d 166, 170, 181 *Cal.Rptr.* 631, 633 (1982). "[T]hus, a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain action against the speeder but the rule bars recovery against the owner of the parked car for negligently parking." *Walters v. Sloan,* 20 *Cal.*3d 199, 202 n. 2, 571 *P.*2d 609, 611 n. 2, 142 *Cal.Rptr.* 152, 154 n. 2 (1977). An arsonist or a pyromaniac who tried to restrain the firefighter from entering a burning house could be liable for assault, for a firefighter does not assume the risk of assault nor does the assault occasion his presence.

A further illustration of the principle that the "fireman's rule" does not bar a suit for any negligence that may occur after the firefighters have reached the fire is found in *Lipson v. Superior Court of Orange County,* 31 *Cal.*3d 362, 644 *P.*2d 822, 182 *Cal.Rptr.* 629 (1982). In *Lipson* firefighters arriving at a boilover in a chemical plant were told by the owner that no toxic chemicals were in the building. The building did in fact store toxic chemicals, fumes from which injured the firefighters. Since the owner's misrepresentation was a subsequent act of misconduct that enhanced the risk of fighting the boilover, distinct from the negligence that caused the boilover and occasioned the firefighters' presence, the court did not apply the "fireman's rule". A firefighter, wrote the court, assumes only those risks that are known or can be reasonably anticipated at the site of the fire. *Id.* at 371, 644 *P.*2d at 828, 182 *Cal.Rptr.* at 635. The risk that the owner of a burning building will deceive the firefighters as to the nature of the hazard is not an inherent part of the job and is not a risk the firefighters knowingly and voluntarily assumed. *Ibid.*

■ The question presented here—whether the "fireman's rule" should be applied to policemen—was left unanswered in *Trainor v. Santana, supra,* 86 *N.J.* at 407. The similarity between firefighters and police officers compels the extension of the rule to the latter. Both are paid to confront crises and allay dangers created by an uncircumspect citizenry, a circumstance that serves to distinguish firefighters and police from most other public employees.[1] Citizens summon police and firefighters to confront danger. Governmental entities maintain police

---

[1] In other respects too public safety employees are singled out for special treatment not accorded to other public servants, *e.g.,* compulsory binding arbitration of labor disputes for police and firemen under *N.J.S.A.* 34:13A–14, and a special category of permissive subjects of negotiation not otherwise recognized under the New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A–1 to –21. See *Paterson Police PBA v. Paterson,* 87 *N.J.* 78, 92–93 (1981); *Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ.,* 78 *N.J.* 144, 158 (1978).

and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront dangers that will arise but to perform some other public function that may incidentally involve risk. In keeping with this distinction many jurisdictions have extended the rule to the police. See, *e.g.,* *Walters v. Sloan, supra; Garcia v. City of South Tucson,* 131 *Ariz.* 315, 640 *P.2d* 1117 (1982); *Hannah v. Jensen,* 298 *N.W.2d* 52 (Minn.1980); *Steelman v. Lind,* 634 *P.2d* 666 (Nev.1981); *Whitten v. Miami-Dade & Sewer Auth.,* 357 *So.2d* 430 (Fla.App. 1978).

In *Walters v. Sloan, supra,* defendant hosted a party at which liquor was served to minors. As not uncommonly happens, some disorder developed, which plaintiff police officer was sent to quell. Several of the intoxicated guests assaulted the officer, who claimed the assault proximately resulted from the defendant's having served liquor to the minors. The court found the "fireman's rule" precluded recovery, for a police officer summoned to restore peace assumes the risk of violence. The court offered a second reason justifying the rule: fundamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement. 20 *Cal.3d* at 204–05, 571 *P.2d* at 612, 142 *Cal.Rptr.* at 155.

This fundamental concept rests on the assumption that governmental entities employ firefighters and police officers, at least in part, to deal with the hazards that may result from their taxpayers' own future acts of negligence. *See Steelman v. Lind, supra,* 634 *P.2d* at 667 (policeman struck by a car while helping a truck driver gather fallen cargo cannot recover against the truck driver for having negligently secured his freight). Exposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple bur-

dens for that protection. *See* 2 F. Harper & F. James, *The Law of Torts,* § 27.14 at 1503 (1956).

Chief Justice Weintraub's analogy in *Krauth, supra,* is apt: as with the homeowner who hires a contractor to repair a weakened roof, the taxpayer who pays the fire and police departments to confront the risks occasioned by his own future acts of negligence does not expect to pay again when the officer is injured while exposed to those risks. Otherwise, individual citizens would compensate police officers twice: once for risking injury, once for sustaining it. Moreover, unlike the roofer, the firefighter does not have time to negotiate a contract with the owner of a burning home; but that is not to say that a trained firefighter proceeds unaware of the normal risks inherent in firefighting. Of course, negligently-created risks that did not create the occasion for the firefighter's presence will give rise to a cause of action against the homeowner. Similarly, a police officer does not have time to draw up a contract with the owner of a stolen car outlining the risks of pursuing the thieves, but the very nature of police work requires officers to recognize the dangers inherent in such emergencies. *N.J.S.A.* 52:17B–68 mandates police training courses for this very reason. Indeed, one who does not know the risks inherent in a high speed chase should not engage in high speed chasing.

We perceive more than mere dollars-and-cents considerations underpinning the fundamental justice of the "fireman's rule." There is at work here a public policy component that strongly opposes the notion that an act of ordinary negligence should expose the actor to liability for injuries sustained in the course of a public servant's performance of necessary, albeit hazardous, public duties. In the absence of a legislative expression of contrary policy, a citizen should not have to run the risk of a civil judgment against him for negligent acts that occasion the presence of a firefighter at the scene of a carelessly-set fire

or of a police officer at a disturbance or unlawful incident resulting from negligent conduct.[2]

### III

█ In *Trainor v. Santana, supra,* 86 *N.J.* at 407, this Court wrote: "If extended to policemen, the rule would preclude recovery by a police officer only for acts of ordinary negligence which create the occasion for a police officer's presence at the place where he is injured." The facts of this case fit squarely within that pronouncement. Freda's negligent key-leaving invited theft, which resulted in the chase and the capture. As pointed out in *Hill v. Yaskin,* 75 *N.J.* 139, 145 (1977), a negligent key-leaver creates the risk of theft and subsequent mishandling of the car. Freda's negligence gave rise to that risk and occasioned Officer Berko's presence at the site of the injury. Unlike the defendant in *Trainor,* Freda committed no subsequent act of negligence contributing to the officer's injury.

Anent our discussion of *Hill* and *Trainor,* we take note of the dissent's mighty labor to create an intolerable conflict between *Hill v. Yaskin, supra,* 75 *N.J.* 139, and today's decision—and, presumably, the decision to the same effect of the trial court. The source of the dissenters' afterthought is by no means clear, for two years ago, after joining, without protest, in *Trainor v. Santana*'s approving discussion of the "fireman's rule," 86 *N.J.* at 404, *id.* at 406–07, they endorsed the following comment on *Hill*'s impact on this case:

---

[2]The dissent points out that the "rescue doctrine" allows a rescuer to recover from one who negligently imperiled a third party for injuries sustained during the rescue, and argues that this doctrine should extend to firefighters and police. Since danger invites rescue, this doctrine rests on proximate cause and foreseeability. *See Wagner v. Int'l R.R. Co.,* 232 *N.Y.* 176, 133 *N.E.* 437 (1921). The fireman's rule precludes recovery not because the rescue is unforeseeable, but because of considerations of public policy. Accordingly, the rationale of the rescue doctrine has no bearing on the fireman's rule.

In *Berko,* the trial court perceptively noted that the fireman's rule was never raised as an issue in *Hill,* and thus, was not considered by this Court in reaching its decision. We agree with its conclusion that *Hill v. Yaskin* lacked precedential value insofar as the applicability of the fireman's rule was concerned. [86 *N.J.* at 408.]

At the risk of belaboring the point, no one in *Hill* argued the proposition that the "fireman's rule" should be extended to police officers. That contention was never even hinted at, much less discussed; and we do not accept the hypothesis, implicit in the dissent, that the Court's failure to have raised on its own and disposed of the affirmative defense of immunity, which was not asserted in *Hill,* amounts to a judicial declaration that the "fireman's rule" does not extend to police officers or that if so extended it did not apply in that case. Here the issue was squarely raised in defendant Freda's motion for summary judgment.

Of course, nothing in the "fireman's rule" prevents Officer Berko from suing the thief. This creates a paradox: since police fight crime, they must expect an occasional encounter with violence. Why then should they be permitted to sue a thief for personal injuries when they have assumed the risk that the thief might fight back? We resolve this paradox by observing that the public policy underlying the "fireman's rule" simply does not extend to intentional abuse directed specifically at a police officer. "To permit this would be to countenance unlimited violence directed at the policeman in the course of most routine duties. Certainly the policeman and his employer should have some private recourse for injuries so blatantly and criminally inflicted." *Krueger v. City of Anaheim, supra,* 130 *Cal.App.*3d at 170, 181 *Cal.Rptr.* at 634. No fundamental unfairness results from allowing an officer to sue a criminal. The crook does not summon the police for help. While the police are paid to risk being assaulted, they are not paid to submit to a criminal assault. *Cf. State v. Mirault,* 92 *N.J.* 492, 499 ("We discern no legislative intention to discount assault upon police officers as though it were something to be expected, a part of the game, so to speak.").

A subtler problem arises when the citizen who summons an officer injures him by a subsequent act of negligence. Since that subsequent negligence does not occasion the officer's presence, the rule does not apply. *Trainor, supra,* 86 *N.J.* at 407; see *supra* 92 *N.J.* at 505–06. The reason for the distinction is just that the initial negligence prompts the police to perform their duty, while the subsequent negligence hinders that performance. Just as *Krauth, supra,* saw no duty to exercise care so as *not* to require a firefighter's aid, we see no reason to eliminate the duty to exercise care once the firefighter, or a police officer, begins to render that aid.

Affirmed.

HANDLER, J., dissenting.

The Court in this case rules that plaintiff John Berko, an Elizabeth police officer who was injured while in the pursuit of a stolen automobile, does not have a valid cause of action against Ralph Freda, the car owner whose negligence may have proximately caused the theft of the automobile. This result deprives the plaintiff of an accepted and warranted cause of action, most recently confirmed in *Hill v. Yaskin,* 75 *N.J.* 139 (1977). The justification for rejecting this cause of action in this circumstance is said to be the so-called "fireman's rule," and the need for extending this rule to police officers. Because I do not believe that the fireman's rule reflects a sound public policy, I dissent from the decision of the Court.

On December 18, 1976 defendant Freda's car was stolen from a supermarket parking lot where Freda had left it with the keys in the ignition. Freda subsequently reported the theft to the police. Later that same day, Officer Berko and a fellow police officer spotted two juveniles driving the stolen car. In an attempt to arrest the thieves, the plaintiff followed the stolen car in a perilous, high-speed chase. Eventually, the stolen vehicle was brought to a halt. As Officer Berko opened the door of the stolen car in order to remove the driver, the driver's

foot hit the gas pedal and Berko was dragged forward by the car and injured.

Berko filed suit against Freda for negligently leaving the keys in the ignition of his car and against Paul Harrigan, the driver of the stolen vehicle. The case against Freda was dismissed on a motion for summary judgment. The remaining cause of action against defendant Harrigan resulted in a default judgment in the amount of $212,644.25.

The majority of this Court upholds the dismissal of the suit against Freda despite the fact that Freda's negligence may have proximately caused Berko's injury. The dismissal is required according to the majority solely because of the status of the victim. If an ordinary citizen were injured as a result of Freda's negligence, recovery would not be denied. *E.g., Zinck v. Whelan,* 120 *N.J.Super.* 432 (App.Div.1972). But here, because the victim Berko is a police officer, he is not given the same remedial right accorded the ordinary private individual. The "fireman's rule," it is claimed, requires this result.

The fireman's rule was adopted in New Jersey by this Court in *Krauth v. Geller,* 31 *N.J.* 270 (1960). In that case a fire fighter who fell from the second floor while fighting a fire in an uncompleted house was not permitted a recovery against the owner whose alleged negligence started the fire. In denying recovery, the Court stated that a fire fighter "cannot complain of negligence in the creation of the very occasion for his engagement." *Id.* at 274. The essence of the fireman's rule is that there is simply no duty of care owed by the otherwise negligent third person to the fire fighter injured as a proximate result of that negligence. *Id.* at 273. The majority here finds that "[t]he similarity between firefighters and police officers compels the extension of the rule to the latter." *Ante* at 86.

The Court today seemingly turns its back upon the reasoning and policy underlying our decision in *Hill v. Yaskin.* In that case, the plaintiff, a Camden police officer, was injured when his police car collided with a stolen vehicle that he was pursuing.

Plaintiff's personal injury claims against the owner of the stolen vehicle were based on the asserted fact that the owner had negligently left the ignition key in the vehicle while it was parked in an unattended parking lot, creating the foreseeable risk that the car could be taken and used by an unauthorized third person.

In upholding such a cause of action, we recognized that in those circumstances a duty of care could arise between the car owner and a police officer responding to recover the stolen automobile in the normal course of his own duties. 75 *N.J.* at 143. We emphasized that the conceptual basis for such a duty of care rested upon the foreseeability of harm from the defendant's conduct to one in the plaintiff's situation. *Id.* at 144. We then applied this basic tort principle to the claim of the plaintiff police officer, relying explicitly upon the reasoning in the important case of *Zinck v. Whelan, supra:*

> This "duty" aspect of foreseeability was concisely set forth by Judge Conford, in the stolen vehicle context, in *Zinck v. Whelan, supra,* wherein he noted:
>> [B]asically the key to duty, negligence and proximate cause in the fact pattern under review is the foreseeability *vel non* to a reasonable man of an unreasonably *enhanced hazard,* when a motor vehicle is left unlocked in a public place with key in the ignition, of both the theft or misappropriation of the vehicle and an ensuing mishandling of it by the taker with death, injury or destruction of property of others lawfully using the highways as the result. If there is such foreseeability, then, on principle, particularly in light of the minimal social utility of the causative conduct of the possessor of the car, a duty arises toward the members of the public using the highways, its breach is negligence, and the injury is the proximate result of the breach, or so a jury should be permitted to find in the generality of cases. [*Id.* 120 *N.J.Super.* at 445 (emphasis in original).] [75 *N.J.* at 144–45]

Consequently, we had "no hesitancy" (75 *N.J.* at 145) in concluding that the car owner, as well as the parking lot operator, had a duty of reasonable care to avoid the foreseeable theft of the automobile, which duty would clearly encompass any police officer who was proximately injured by a breach of such duty.[1]

Against this cogent analysis, the reasons proffered by the Court for the contrary result appear insubstantial. A principal

---

[1] We said on this point in *Hill*:

reason advanced by the majority for denying a cause of action to both police officers and fire fighters is that "[b]oth are paid to confront crises and allay dangers" that may proximately cause their injury or death, *ante* at 86. However, the circumstances that police officers and fire fighters are paid for their services and that their duties entail exposure to dangers should not serve to negate the duty of reasonable care owing to them by third persons. As noted by Acting Chief Justice Tobriner of the California Supreme Court, dissenting in *Walters v. Sloan,* 20 *Cal.*3d 199, 571 *P.*2d 609, 142 *Cal.Rptr.* 152, (Sup.Ct.1977),

The argument, in essence, is that the fireman or policeman, in accepting the salary and fringe benefits offered for his job, assumes all normal risks inherent

* * * Once we acknowledge *conceptually* the existence of a duty predicated on foreseeability of an increased hazard of theft and subsequent mishandling of an automobile, it should then become the jury's task to determine whether under the facts of this case that duty was violated by defendant [owner] and her conduct was a substantial causative factor in the plaintiff's injury. [75 *N.J.* at 147]

This Court noted in the subsequent decision of *Trainor v. Santana,* 86 *N.J.* 403 (1981), that "the fireman's rule was never raised as an issue in *Hill* and, thus, was not considered by this Court in reaching its decision." *Id.* at 408. It is true that the Court in *Hill* did not expressly consider the fireman's rule and, as pointed out by the majority, we assumed that on this point *Hill* did not constitute a "precedent." We were not called upon in *Trainor,* however, to re-examine the underlying rationale and policy implications of *Hill* because we rested our decision in *Trainor* on alternative grounds. I believe it significant that in *Hill,* we never intimated that there could be no duty of care based solely upon the status of the plaintiff victim, as now explicitly determined by the majority in this case. Further, *Hill* did not suggest that there was any immunity or affirmative defense relating to the plaintiff's status that could negate ordinary liability. To the contrary, the Court in *Hill* expressly found substantial policy grounds in favor of an injured police officer against the negligent car owner. *Hill v. Yaskin, supra,* 75 *N.J.* at 148. *See infra* at 100–102. The majority does not explain in this case why the Court in *Hill,* when considering the policy reasons going to the existence and essence of a duty of care, did not reject a duty of care as a threshold matter by calling upon the concerns ascribed to the fireman's rule in the majority opinion. The Court's opinion today not only ignores the competing considerations in *Hill* that justified an award in favor of an injured police officer. It also fails even to balance these policy considerations against those ascribed to the fireman's rule.

in his employment as a matter of law, and thus may not recover from one who negligently creates such a risk.

The fallacy in this argument is simply that it proves too much. Under this analysis, [a public] employee would routinely be barred from bringing a tort action whenever an injury he suffers at the hands of a negligent tortfeasor could be characterized as a normal inherent risk of his employment. [20 *Cal*.3d at 212, 571 *P*.2d at 617, 142 *Cal.Rptr.* at 160 (citations omitted) ]

Nevertheless, all public employees—other than police officers and fire fighters—have the right to maintain traditional tort actions against third parties for virtually all negligently inflicted injury arising in the performance of the duties of their employment. Despite the availability of workers' compensation, these tort actions against third parties are permitted because workers' compensation standing alone is rarely adequate redress. Employees injured in the course of their employment are therefore enabled to seek additional compensation from responsible third persons. *See N.J.S.A.* 34:15–40; *Schweizer v. Elox Div. of Colt Industries,* 70 *N.J.* 280, 287 (1976); *United States Casualty Co. v. Hercules Powder Co.,* 4 *N.J.* 157, 165 (1950). We emphasized most recently in *Lyon v. Barrett,* 89 *N.J.* 294, 305 (1982) that tort actions by employees against negligent third parties should be preserved to the maximum extent allowable by the workers' compensation law because "[t]he fixed dollar ceilings on benefits under the workers' compensation laws are the result of a trade-off of certain liability of the employer for reduced awards for the employee."

The majority attempts to distinguish police officers and fire fighters who are paid to "confront danger" from other kinds of public employees on the ground that the latter are merely paid "to perform some other public function[s] that may incidentally involve risk." *Ante* at 86. This asserted distinction merely disguises the fact there are more similarities than differences between police officers and fire fighters and a host of other public employees. Police officers on traffic patrol may be exposed to risks entirely comparable to highway workers doing

road work. Many public employees—police officer and sanitation worker alike—confront dangers on the job. Conversely, both classes of employees also confront "ordinary" risks not involving unusual danger. Because law enforcement in some instances entails greater risks, police officers should not be deemed to have foresaken the right to seek compensation for injury resulting from such risks—unless, as the majority seems to believe, the monetary compensation that police officers receive is commensurate with the extraordinary risks of their jobs. *Ante* at 87–88. But, no empirical or rhetorical support is marshalled to bolster this assumption.[2] And even if police officers and fire fighters are presumed to be adequately compensated for the risks of their work, the majority does not explain why other governmental employees, who must also be presumed to receive adequate compensation for their work, should not therefore be prohibited, as are police officers and fire fighters, from recovering from negligent third parties for injuries attributable to the risks normally inherent in their employment.

---

[2] I would point out legislation, and its antecedent history, that recognizes that police officers and fire fighters can—and must—resort to compulsory arbitration to resolve their grievances over the adequacy of their compensation. *See L.*1977, c. 85; *N.J.S.A.* 34:13A–14 to –21. Further, compensation for disabling injury received in the line of duty by police officers and fire fighters, entitling the injured victim to an accidental disability pension, is not measured by the extent or gravity of the disability and resulting damages but solely by the statutory allowance. *N.J.S.A.* 43:16A–7(2). Moreover, such an accidental disability is not easily established; the disability must be clearly proved and strictly tied to employment. *See Korelnia v. Public Employees' Retirement System Trustees,* 83 *N.J.* 163 (1980); *Gerba v. Public Employees' Retirement System Trustees,* 83 *N.J.* 174 (1980). In addition, such an award excludes certain disabling conditions that would clearly be included in damages recoverable in a third party personal injury negligence action. *N.J.S.A.* 43:16A–7(4). Moreover, the amount of a disability award, it must be noted, is offset by any workers' compensation attributable to the same injury. *N.J.S.A.* 43:16A–15.2 b. Hence, even adding accidental disability pension benefits, the "compensation" available to the average police officer or fire fighter can hardly be considered an adequate substitute for the complete redress that a negligence recovery against a responsible third party contemplates.

The majority says that because police officers and fire fighters only assume the normal risks of their positions, they can recover for injuries sustained in the course of the performance of employment duties attributable to "independent causes." *Ante* at 85–86. I guess that the term "independent causes" is intended to be roughly equivalent to "abnormal risks." No logical explanation is offered why these "abnormal risks" or "independent causes" could not be said to be among the risks that police officers and fire fighters assume through their paid employment. The example of an "independent cause" provided by the majority is the assault upon a fire fighter by an arsonist or a pyromaniac who seeks to restrain the fire fighter from entering a burning house. *Ante* at 85. Why is not the risk that the fire fighter's work will be obstructed considered a *normal* risk of employment assumed by the fire fighter? Such an assault on a fire fighter would certainly be a foreseeable risk falling within the scope of employment and the remedial reach of workers' compensation or the pension accidental disability provisions. This example points to the hairsplitting that is entailed in trying to distinguish "normal" risks from "abnormal" risks or "independent causes." Because of the impossibility of accurately defining so-called normal risks that police officers and fire fighters "knowingly and voluntarily assume[ ]," *ante* at 86, one is driven to believe that the majority's "independent causes" exception functions simply as a palliative to mitigate the regressive effects that the extension and application of the fireman's rule produces.[3]

---

[3]The "independent causes" exception may well serve the purpose of relaxing the fireman's rule. In view of the basic unfairness of the rule, there is every reason to believe that this exception will be broadened to a point where it will swallow the rule itself. The line between "independent causes" arising out of the performance of duties and those that are not cannot be clearly drawn. *See, e.g., Lipson v. Superior Court of Orange Cty.,* 31 *Cal.*3d 362, 644 *P.*2d 822, 182 *Cal.Rptr.* 629 (Sup.Ct.1982). The search for the exception is bound to produce endless litigation and undoubted confusion. In my estimation, these concerns are a further argument for abrogating the fireman's rule, thus eliminating the search for exceptions to the rule.

The majority also claims that its holding is in accord with "fundamental concepts of justice" that call for the "prohibit[ion of] a police officer from complaining of negligence in the creation of the very occasion for his engagement." *Ante* at 87. It explains "that governmental entities employ firefighters and police officers, at least in part, to deal with the hazards that may result from their taxpayers' own future acts of negligence," and further, that "[e]xposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple burdens for that protection." *Ante* at 87–88.

This is, in my consideration, a weak frame upon which to drape the heavy weight of a public policy argument. The contention that taxpayers will be forced to bear multiple burdens for police and fire protection incorrectly assumes that the police officer or fire fighter has already been compensated adequately for the injury received in the line of duty. Additionally, the argument inaccurately characterizes the particular tortfeasor as a "taxpayer" of the municipality or governmental entity that employs the police officer or fire fighter. Any citizen, any member of the public, regardless of whether he or she pays taxes to the municipality, is entitled to the police and fire protection offered by government; that entitlement does not rest upon the payment of taxes in support of government. Further, the "notion" that a taxpayer is the employer of the police officer or fire fighter is ill-conceived. *Cf. Lyon v. Barrett, supra,* 89 *N.J.* at 304 (the immunity of the workers' compensation laws that shields the corporation from tort liability to an employee does not extend to those persons who are owners of the corporation). If this characterization were sound, the defense of workers' compensation would presumably bar any public employee's right to recover from a negligent taxpayer whose tortious conduct caused injuries received by the public employee arising out of his or her employment. And, on this premise, this bar would apply to all injuries received directly in the line of duty including those attributable to the so-called

"independent causes." In short, there would be no need for a "fireman's rule."[4]

The majority finds a deeper reason "at work" for extending the fireman's rule to deny recovery on behalf of an injured police officer, asserting "a public policy component that strongly opposes the notion that an act of ordinary negligence should expose the actor to liability for injuries sustained in the course of a public servant's performance of necessary, albeit hazardous, public duties." *Ante* at 88. It concludes that "a citizen should not have to run the risk of a civil judgment against him for negligent acts that occasion the presence of a firefighter at the scene of a carelessly-set fire or of a police officer at a disturbance or unlawful incident resulting from negligent conduct." *Ante* at 88–89.

I disagree with this perception of public policy. Our most basic jurisprudence affirms a right of redress for those injured as a result of the wrongdoing of others. We have on numerous occasions expressed antipathy toward immunities and defenses

---

[4]In these cases, the majority also seeks to compare the negligent car owner whose conduct injures the police officer to a homeowner who employs a roofing contractor:

> [A]s with the homeowner who hires a contractor to repair a weakened roof, the taxpayer who pays the fire and police departments to confront the risks occasioned by his own future acts of negligence does not expect to pay again when the officer is injured while exposed to those risks. [*Ante* at 88]

This analogy is neither apt nor applicable. The homeowner's relationship to the independent contractor is based upon a mutual and voluntary undertaking, a contract entered into between the parties, which involves risks that have already been created and are thus unavoidable. The contract between the parties necessarily excludes compensation for any accidental injuries sustained in performing the work of the contract. It is a misnomer to characterize the relationship between a fire fighter and a homeowner in a similar fashion. The relationship between the parties is not founded in a mutual agreement nor does it involve clearly defined risks beyond the homeowner's control. It is even less appropriate to posit such an agreement or voluntary undertaking between a police officer pursuing a stolen car and the negligent owner of that car who may not even be a taxpayer of the community employing the police officer.

that perpetuate the injustice of unredressed wrongs. *E.g., Renz v. Penn Central Corp.,* 87 *N.J.* 437 (1981); *Collopy v. Newark Eye and Ear Infirmary,* 27 *N.J.* 29 (1958). If the risk of injury is foreseeable and avoidable through the exercise of reasonable care, injury resulting from the wrongful conduct should not go unremedied. *E.g., Cogliati v. Ecco High Frequency Corp.,* 92 *N.J.* 402 (1983); *Mirza v. Filmore Corp.,* 92 *N.J.* 390 (1983). We have even assessed liability in instances, as here, when the foreseeable criminal act of a third person is within the risk of injury created by the negligent conduct of a defendant. *E.g., Butler v. Acme Markets, Inc.,* 89 *N.J.* 270 (1982); *Trentacost v. Brussel,* 82 *N.J.* 214 (1980). And, specifically we have found the justice in affixing such responsibility where the criminal act is car theft. *E.g., Hill v. Yaskin, supra; Zinck v. Whelan, supra.*

Police officers and fire fighters should not be placed beyond the pale of a judicial philosophy that searches for just and fair results. Our jurisprudence has long established that individuals who voluntarily attempt a rescue in response to a negligently created danger have a valid cause of action under the rescuer's rule, which recognizes that danger invites rescue. *Harrison v. Middlesex Water Co.,* 158 *N.J.Super.* 368, 376 (App.Div.1978), rev'd on other grounds, 80 *N.J.* 391 (1979); *Demetro v. Penna. R.R.,* 90 *N.J.Super.* 308, 310 (App.Div.1966). I am at a loss to understand why this judicial philosophy is repudiated in a case such as this, where the rescuer is not simply a good samaritan but a professional, who is not simply "invited" to rescue but is expected to rescue. In this context, the foreseeability of rescue, which is the predicate for imposing a duty of care, moves from a reasonable anticipation to virtual certainty. If anything, the strength of the duty of care owed to such a rescuer by the negligent party should increase with the certainty of the foreseeability that rescue will be a consequence of the negligence.

The Court talks of the unfairness of exposing a citizen to the risk of a civil judgment for negligence that injures a police

officer or fire fighter who in effect comes to his rescue. The Court, however, forgets that in the case before us the "citizen" for whom it now professes sympathy is responsible for a substantial amount of social and personal misfortune.[5] In *Hill v. Yaskin,* we considered this very proposition—the status of the citizen-car owner. We there found ourselves conclusively persuaded that in a case such as this—involving automobile theft— it is only right and just that liability be imposed upon this class of tortfeasor whose negligent behavior threatens not only police officers called upon to contend with the resultant crime but imperils all members of society.[6] The "minimal social utility of the causative conduct" of a car owner in this setting (*Zinck v. Whelan, supra,* 120 *N.J.Super.* at 445) is totally dwarfed by

---

[5]One of the concerns of the *Krauth* court was that without the fireman's rule an unreasonable burden might be placed on a single negligent tortfeasor. *Krauth, supra,* 31 *N.J.* at 274. *See* Moss, *An Examination of the California Fireman's Rule,* 6 *Pac.L.J.* 660, 672–73 (1975). The prevalence and availability of insurance has greatly reduced the significance of this concern. In *Eule v. Eule Motor Sales,* 34 *N.J.* 537 (1961), a case that dealt with whether a wife can sue a partnership of which her husband is a member, the Chief Justice referred to the common practice of an "employer routinely purchasing insurance which protects the employee as well." *Id.* at 540. Similarly, in *Hastings v. Hastings,* 33 *N.J.* 247 (1960) the Chief Justice joined in a dissent authored by Justice Jacobs wherein he stated:

In today's society, practically every man with any sense of responsibility carries suitable insurance coverage on the automobile he owns and operates. [*Id.* at 253–54]

We have now recognized the relevance of insurance in eliminating interspousal immunity for negligence in the use of automobiles, *Immer v. Risko,* 56 *N.J.* 482 (1970), as well as for ordinary negligence, *Merenoff v. Merenoff,* 76 *N.J.* 535 (1978). In the case at bar, the majority is unable to articulate any substantial reason why insurance coverage should not be given great weight in recognizing the viability of a cause of action.

[6]In *Hill v. Yaskin* we set forth in considerable detail the results of statistical studies demonstrating the epidemic incidence of car theft, emphasizing the personal responsibility of individual car owners in contributing to this form of crime. 75 *N.J.* at 145. There is every reason to believe that the grave consequences of this crime are still rampant, *e.g.,* "Thieves hit cars of 1 in 62 of us," *USA Today,* March 23, 1983, p. 1, col. 2. New Jersey regrettably is fifth among all states in terms of the frequency of car thefts. *Id.* at 3A.

society's need to protect all potential victims including especially the police officer summoned to solve the crime. The person whom the majority now seeks to protect—the car owner whose lack of care encourages the theft of his own automobile—is not more deserving than the police officer who must thwart the crime. *Cf. State v. Mirault,* 92 *N.J.* 492, 499 (1983) (assault upon police officers not to be discounted "as though it were something to be expected, a part of the game, so to speak.") It is, then, perplexing to find the majority disregarding completely the public policy that we underwrote in *Hill v. Yaskin.*

When car owners negligently leave the keys in the ignition of their cars, there is no reason that they should not be held responsible for the injurious consequences of their conduct. To exclude police officers from the scope of potential liability will reduce the deterrent effect of the civil law against such irresponsible conduct. It will also leave the injured officers with only two avenues of possible compensation: resort to a less-than-adequate workers' compensation and pension scheme and a lawsuit against a car thief who will likely be judgment proof. Thus, erecting the "fireman's rule" as a barrier to suit by an injured police officer against a negligent car owner runs counter to the principles of justice upon which our system of tort law is based.

I would remand this case to the trial court for a jury determination of whether defendant Freda's actions proximately caused Officer Berko's injury.

Justice SCHREIBER joins in this opinion.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK and O'HERN—4.

*For reversal and remandment*—Justices SCHREIBER and HANDLER—2.