EUGENE PUNTASECCA, APPELLANT, v. VIOLENT CRIMES
COMPENSATION BOARD, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1986—Decided December 12, 1986.

Before Judges MICHELS, SKILLMAN and LANDAU.

*Thomas K. Hynes* argued the cause for appellant (*Joseph K. Greaney,* attorney; *Kevin J. Hartmann,* on the brief).

*Cindy R. Merker* argued the cause for respondent.

The opinion of the court was delivered by

LANDAU, J.S.C. (temporarily assigned).

Claimant Eugene Puntasecca (Puntasecca), a Teaneck firefighter, appeals from a final determination of the Violent Crimes Compensation Board (Board) which denied his claim for compensation for certain lost earnings resulting from injuries he sustained while engaged in extinguishing an arson-caused fire.

The sole basis for rejection of his claim disclosed by the record was the Board's determination that the "fireman's rule" recognized in *Berko v. Freda,* 93 *N.J.* 81 (1983) precluded such

award because Puntasecca's injuries were received in the performance of his duties as a professional firefighter.

Puntasecca received worker's compensation benefits, and sought no compensation under the Criminal Injuries Compensation Act of 1971 (*N.J.S.A.* 52:4B–1 *et seq.*) for loss of his firefighter earnings. He had however, been employed as a part-time truck driver to augment his firefighter income, and it was for the loss of those supplemental earnings that he sought compensation.

Thus, the limited question before us is whether the "fireman's rule" constitutes a legal bar to compensation by the Board for income loss wholly unrelated to Puntasecca's fire fighting duties. We here hold that it does not, and therefore reverse and remand.

## ELIGIBILITY OF VICTIMS OF ARSON UNDER N.J.S.A. 52:4B–1, ET SEQ.

The Criminal Injuries Compensation Act of 1971 provides an administrative framework for victims of crimes designated as violent under *N.J.S.A.* 52:4B–11 to receive limited reimbursement for financial losses occasioned by such crimes.

The act vests broad discretion in the Violent Crimes Compensation Board established thereunder (*N.J.S.A.* 52:4B–3) to determine whether payment of compensation is warranted, based upon "... any circumstances it determines to be relevant ..." (*N.J.S.A.* 52:4B–10(c)) including payment for "loss of earning power." (*N.J.S.A.* 52:4B–12(b)) These powers are subject to availability of adequate funding. *N.J.S.A.* 52:4B–9. See *White v. Violent Crimes Compensation Board,* 76 *N.J.* 368, 386 (n. 5) (1978). *N.J.S.A.* 52:4B–11(b) does not specifically mention arson in its enumeration of violent crimes but it includes a category 10 which refers broadly to "any other crime involving violence."

As with any administrative determination, a determination by the Violent Crimes Compensation Board which has correctly applied the applicable law will not be reversed unless

arbitrary, capricious, or unreasonable. *In re Hollywood,* 124 *N.J.Super.* 50, 54 (App.Div.1973). The board's conclusions as to eligibility should be articulated in findings and conclusions supported by the administrative record in order to enable a reviewing court to determine whether a claimant has met his burden of satisfying the eligibility requirements of the act by a preponderance of the evidence. *In re Saferstein,* 160 *N.J.Super.* 393, 397 (App.Div.1978).

In this case, it appears that the Board assumed that arson, *per se,* is a "crime involving violence" under *N.J.S.A.* 52:4B–11(b)10. Moreover, it appears to have accepted, without making an independent finding, the conclusion by law enforcement authorities that the fire during which Puntasecca was injured was the result of arson.

These findings and the facts supporting them must be placed on the record because the ultimate determination of criminality, even if primarily based upon conclusions of investigative agencies, is the obligation of the Board. *In re Saferstein,* 160 *N.J.Super.* at 398.

Inasmuch as this matter is to be remanded, the order of proceeding should be first to explore whether the determination of arson and resulting injury may be independently made, as required by *Saferstein.*

■ Is arson a crime of violence under the Criminal Injuries Compensation Act? We hold that because arson carries an inherent risk of causing bodily injury to occupants, rescuers, and persons seeking to extinguish a fire, it may be considered a crime of violence for the limited purposes of *N.J.S.A.* 52:4B–11(b)10, where a claimant is in fact injured by reason of an arson-caused fire.

■ It is not necessary that there be a criminal determination of guilt under any particular paragraph of *N.J.S.A.* 2C:17–1, or indeed that there be any prior criminal adjudication. The Board, however, must make its own determination of criminality under *N.J.S.A.* 2C:17–1 and resulting injury, supported by a

preponderance of credible evidence. *In re Saferstein*, 160 *N.J.Super.* at 397.

## EFFECT OF "FIREMAN'S RULE"

■ The sole reason for denial of benefits to Puntasecca was expressed by the Board:

> The Board finds that claimant as a professional firefighter and in the performance of his duties is not eligible for compensation from this Board since the injuries were received in the performance of his duties. *Berko v. Freda*, 93 *N.J.* 81 (1983) is the most recent New Jersey Supreme Court decision involving the "Firemen's Rule" i.e. negligence in causing a fire furnishes no liability to a professional fireman injured fighting a fire.

> The Board would extend this rule to apply to a fire caused by an arsonist. It is further noted that the claimant was not on the premises at the time of the fire but came upon the premises in the performance of his duties as a professional firefighter to extinguish a fire which was already in progress.

The rationale for the "fireman's rule" was expressed in *Krauth v. Israel Geller and Buckingham Homes, Inc.*, 31 *N.J.* 270, 274 (1960) as follows:

> Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling. [Citations omitted.]

The rule was subsequently extended to police officers in *Berko v. Freda*, 93 *N.J.* 81 (1983). However, the rule has not been interpreted to bar a suit by a firefighter or policeman against the perpetrator of a willful tort or criminal act. The rationale and history of the "rule" has recently been fully set forth in *Mahoney v. Carus Chemical Co., Inc.*, 102 *N.J.* 564 (1986) in which it was held that the "fireman's rule" does not extend to one whose willful and wanton misconduct creates the hazard which injures a firefighter or police officer. In arriving at its conclusions the court noted that *Krauth* implies that an arsonist would not enjoy immunity. *Id.* at 572. It also expressly recognized that existing law excludes intentional conduct from the scope of the "fireman's rule." *Id.* at 573.

■ Thus, in extending the "fireman's rule" to a fire caused by an arsonist, the Board plainly misconceived the underlying basis for the rule, and the applicable law. Clearly, the "fireman's rule" does not itself bar a firefighter from recovery for injuries from an arson-caused fire. Since the determination of the Board was based on this mistaken legal premise, we must reverse that determination.

In so doing, we express no view on the merits of whether an award is here warranted. This is clearly committed to the expertise of the Board which has been delegated broad discretion under the statute. See, *e.g. N.J.S.A.* 52:4B–9; 11; 19.

We remand to the Board so that it may make the initial determinations required by *Saferstein*, 160 *N.J.Super.* at 397 and, depending upon that jurisdictional determination, exercise its discretion consistent with this opinion, to decide whether Puntasecca may receive compensation for loss of his part-time trucker salary.

Reversed and remanded. We do not retain jurisdiction.