James Richard CARSON, and Trina Denise Carson, and Matthew Gray Baird, Plaintiffs/Appellants,

v.

Judith Green HEADRICK, Defendant/Appellee.

Supreme Court of Tennessee, at Knoxville.

June 5, 1995.

Ward S. Whelchel, C. Edward Daniel, Knoxville, for appellant.

Janet L. Hogan, Hogan & Hogan, Knoxville, for appellee.

## OPINION

ANDERSON, Chief Justice.

We granted this appeal to determine whether we should reaffirm or abandon the policemen and firemen's rule, which precludes firefighters and police officers from recovering damages for injuries arising out of risks peculiar to their employment.

We are persuaded that sound public policy considerations support the continuation of the rule based on the nature of the duty of police officers and the relationship between the officers and the public they protect. We, therefore, conclude that a citizen calling for police assistance owes no duty of ordinary care to responding police officers who are injured. We also conclude, however, that a duty of care is owed where police officers are injured by a citizen's intentional, malicious, or reckless misconduct. In so holding, we reaffirm the policemen and firemen's rule and adopt its principal exception.

The Court of Appeals upheld a trial court summary judgment for the citizen on the ground that the police officers had assumed the risk. Since our decision is based on the reaffirmation of the policemen and firemen's rule, we affirm the Court of Appeals' decision, as modified, on the separate grounds set out below.

## BACKGROUND

At approximately 4:30 p.m. on October 16, 1991, the defendant, Judith Headrick, called the Knox County, Tennessee, emergency 911 service to report a potential domestic disturbance at her home in West Knox County. Specifically, Headrick informed the 911 dispatcher that she was at a truck park near her home and needed a police officer to accompany her to her home to pick up some personal belongings because her husband, Jerry Headrick, had threatened to "destroy everything" if she was not home by 5:30 p.m. She reported to the dispatcher that he was violent at times; that he had been drinking and had guns in the house. The 911 dispatcher conveyed this information to the sheriff's department, along with instructions to meet the defendant.

The plaintiffs, James Carson and Matthew Baird, patrol officers with the Knox County Sheriff's Department, met Headrick at the Flying J Travel Plaza, and after a brief conversation, accompanied her to her nearby home. Officer Carson was in the lead driving a sheriff's department cruiser, followed by Headrick in her own car, who in turn was

followed by Officer Baird in another sheriff's department cruiser. As the vehicles arrived, Jerry Headrick began firing a "30.06" caliber rifle, with a scope sight from a concealed position in or near the Headricks' mobile home. Both officers were struck by the gunfire—Carson in his upper body and arm, and Baird in his right hand and on the right side of his head. After wounding the officers, Jerry Headrick killed himself.

Later, Officers Carson and Baird filed suit against Judith Headrick charging that their injuries were caused by her negligent failure to communicate to them her actual knowledge of threats made by her husband and her actual knowledge that her husband possessed a "30.06" deer rifle with a scope sight.

Headrick moved for summary judgment, relying upon the policemen and firemen's rule for the proposition that she had no duty to warn the police officers of the dangers involved in responding to a citizen's call for assistance because the risks were obvious and should have been readily apparent to the officers who were experienced in responding to violent situations. Headrick also contended that the intentional acts of Jerry Headrick were the superseding, intervening cause of the plaintiffs' injuries and that the plaintiffs assumed the risk.

In response, the plaintiffs argued that Headrick had a duty to warn. They filed an affidavit in which Carson stated that when he and Baird spoke with Headrick at the Flying J Travel Plaza before proceeding to her home, she said that her husband, Jerry Headrick, had never displayed signs of physical abuse toward her; that he had never engaged in altercations with law enforcement officers; and that the type of firearms Jerry Headrick had in his possession were "hunting weapons." Attached to Carson's affidavit was a petition for an order of protection whereby Judith Headrick had sought protection from Jerry Headrick three years earlier, and in which she alleged that Jerry Headrick had physically abused her and threatened that if she came back home "he would shoot me and any police officers with me."

The trial court judge granted the defendant's motion for summary judgment, but failed to state the ground for sustaining the motion. The Court of Appeals affirmed, holding that the plaintiff had assumed the risk. A few weeks later this Court released its decision in *Perez v. McConkey*, 872 S.W.2d 897 (Tenn.1994), in which the doctrine of implied assumption of risk was abolished. We granted the plaintiffs' appeal to consider the viability of the policemen and firemen's rule. For the reasons articulated below, we now reaffirm the rule which precludes negligence actions by firemen and policemen who are injured by a risk peculiar to their employment.

## POLICEMEN AND FIREMEN'S RULE

The policemen and firemen's rule precludes firefighters and police officers from recovering damages for injuries arising out of risks peculiar to their employment. The rule originated over one hundred years ago in *Gibson v. Leonard*, 143 Ill. 182, 32 N.E. 182 (1892). In determining the nature and extent of the duty owed a fireman injured when responding to a fire, the *Gibson* court applied the traditional, premises liability, common-law classification rule. Under that rule, the nature and extent of the duty owed an injured person was determined by classifying the injured person as either an "invitee," a "licensee," or a "trespasser." For example, an injured business patron would be classified as an "invitee" and owed a duty of reasonable care. By contrast, a landowner owed only the duty to refrain from willfully injuring a social guest, classified as a "licensee," or a person coming onto the property without permission, classified as a "trespasser." *See Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn.1984) (discussing the common law rule).

Reasoning that a fireman is privileged to enter property at any place and time, without the owner's permission, the *Gibson* court classified the injured fireman as a licensee, and therefore held that the landowner owed only the duty to avoid inflicting injury by willful, wanton, or intentional acts. *Id., see also Pottebaum v. Hinds*, 347 N.W.2d 642, 644 (Iowa 1984) (discussing the historical origin of the rule).

The rule gained wide acceptance, and was universally extended and applied to police officers suing to recover for injuries sustained while encountering risks peculiar to their employment. *See generally,* Richard C. Tinney, *Annotation, Liability of Owner or Occupant of Premises to Police Officer Coming Thereon in Discharge of Officer's Duty,* 30 A.L.R.4th 81 (1984 & Supp.1994); 1 A. Best, *Comparative Negligence Law & Practice,* § 4.20[3][b], p. 4–82 (Bender, 1994).

In Tennessee, the policemen and firemen's rule was first adopted in *Burroughs Adding Machine Co. v. Fryar,* 132 Tenn. 612, 179 S.W. 127 (1915). There, a police officer was injured as a result of a business owner's negligence. This Court held the policeman could not recover because he was a licensee and

> the authorities are uniform to the effect that the owner of property is under no obligation to a policeman or fireman who goes thereupon in the discharge of his duty, except to refrain from inflicting upon such an officer a willful or wanton injury.

*Id.,* 179 S.W. at 128 (emphasis added).

The policemen and firemen's rule was again applied in *Buckeye Cotton Oil Co. v. Campagna,* 146 Tenn. 389, 242 S.W. 646 (1922). There, however, the Memphis fireman who was killed while fighting a fire was classified as an "invitee," to whom the landowner owed a duty of reasonable care because he was fighting a fire located outside the city limits of Memphis, and therefore, outside the scope of his public duty. *Id.,* 242 S.W. at 647.

As time passed, the common-law premises liability classification rule from which the policemen and firemen's rule originated was largely abandoned in most jurisdictions, including Tennessee. Best, § 4.20[3][b], p. 4–79. In 1984, this Court, in *Hudson v. Gaitan,* abolished the distinction between the duty owed to an "invitee" and the duty owed to a "licensee" stating:

> [t]he common law classifications of one injured on land of another as an "invitee" or "licensee" are no longer determinative in this jurisdiction in assessing the duty of care owed by the landowner to the person injured; the duty owed is one of reason-

able care under all of the attendant circumstances. . . .

*Id.,* 675 S.W.2d at 703.

Relying upon *Hudson v. Gaitan,* Carson and Baird argue in this case that the duty owed by Headrick is one of reasonable care under all the attendant circumstances. Our research reveals, however, that the majority of courts in other jurisdictions have reaffirmed the policemen and firemen's rule, relying upon other rationales, including assumption of risk and public policy considerations, even though the premises liability classification rule has given way to one general standard of reasonable care under the circumstances.

For example, in the landmark case of *Krauth v. Geller,* 31 N.J. 270, 157 A.2d 129 (1960), the New Jersey Supreme court held that no duty was owed to the fireman by the negligent citizen because the fireman had primarily assumed the risk, explaining the rationale as follows.

> . . . . [I]t is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences.

*Id.,* 157 A.2d at 130–31.

Later, in *Berko v. Freda,* 93 N.J. 81, 459 A.2d 663 (1983), the New Jersey court extended the *Krauth* rule to police officers, stating:

> The similarity between firefighters and police officers compels the extension of the rule to the latter. Both are paid to confront crises and allay dangers created by an uncircumspect citizenry, a circumstance that serves to distinguish firefighters and

police from most other public employees. Citizens summon police and firefighters to confront danger. Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront dangers that will arise but to perform some other public function that may incidentally involve risk.

*Id.*, 459 A.2d at 666.

Because a number of jurisdictions have merged the doctrine of assumption of risk into their comparative fault schemes,[1] many courts are citing public policy considerations as the sole basis for reaffirming the utility and viability of the policemen and firemen's rule. Perhaps the best example of that line of cases is *Kreski v. Modern Wholesale Elec. Supply Co.*, 429 Mich. 347, 415 N.W.2d 178 (1987), in which the Michigan Supreme Court examined the twin rationales supporting the policemen and firemen's rule, but declined to base its adoption of the rule on primary assumption of risk, concluding instead that "[t]he public policy rationales advanced in favor of the rule are more than sufficient to support it." *Id.* 415 N.W.2d at 186. The *Kreski* court summarized the public policy considerations as follows:

The policy arguments for adopting a firemen's rule stem from the nature of the service provided by firefighters and police officers, as well as the relationship between these safety officers and the public they are employed to protect.

It is beyond peradventure that the maintenance of organized society requires the presence and protection of firefighters and police officers. The fact is that situations requiring their presence are as inevitable as anything in life can be. It is apparent that these officers are employed for the benefit of society in general, and for people involved in circumstances requiring their presence in particular. The court in *Calvert [v. Garvey Elevators, Inc.*, 236 Kan. 570, 694 P.2d 433 (1985) ] noted that '[f]ire-

fighters enter on the premises to discharge their duties. Fire fighters are present upon the premises, not because of any private duty owed the occupant, but because of the duty owed to the public as a whole.' *Calvert, supra*, 236 Kan. at 576, 694 P.2d 433.

The public hires, trains, and compensates firefighters and police officers to deal with dangerous, but inevitable situations. Usually, especially with fires, negligence causes the occasion for the safety officer's presence. *Id.*, 415 N.W.2d at 186–87.

After conducting a thorough analysis of the various rationales advanced to support the rule, the *Kreski* court concluded that "considerations of fairness and public policy" compelled reaffirmation of the policemen and firemen's rule for Michigan. *Id.*, 415 N.W.2d at 189.

Although jurisdictions are not uniform as to the rationale, the vast majority of courts faced with the issue have reaffirmed the policemen and firemen's rule, despite the abolition of its original premises liability foundation and the merger of assumption of risk with comparative fault. *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609 (1977); *Kilpatrick v. Sklar*, 548 So.2d 215 (Fla.1989); *Thomas v. Pang*, 72 Haw. 191, 811 P.2d 821 (1991); *Winn v. Frasher*, 116 Idaho 500, 777 P.2d 722 (1989); *Pottebaum v. Hinds, supra; Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 694 P.2d 433 (1985); *Buren v. Midwest Indus. Inc.*, 380 S.W.2d 96 (Ky.1964); *Kreski v. Modern Wholesale Elec. Supply Co., supra; Moody v. Manny's Auto Repair*, 110 Nev. 320, 871 P.2d 935 (1994); *Steelman v. Lind*, 97 Nev. 425, 634 P.2d 666 (1981); *Migdal v. Stamp*, 132 N.H. 171, 564 A.2d 826 (1989); *England v. Tasker*, 129 N.H. 467, 529 A.2d 938 (1987); *Mahoney v. Carus Chemical Co., Inc.*, 102 N.J. 564, 510 A.2d 4 (1986); *Berko v. Freda, supra; Krauth v. Geller, supra; Mignone v. Fieldcrest Mills*, 556 A.2d 35 (R.I.1989); *Wright v. Coleman*, 148 Wis.2d 897, 436 N.W.2d 864 (1989); *Hass v. Chicago & N.W. Ry. Co.*, 48

**1.** *See Perez v. McConkey*, 872 S.W.2d 897 (Tenn. 1994) (citing cases), in which we abolished the doctrine of implied assumption of risk, as well as the terminology, and stated that analysis of primary implied assumption of risk issues should proceed in terms of duty owed, with comparative fault principles governing issues involving secondary implied assumption of risk.

Wis.2d 321, 179 N.W.2d 885 (1970); *Grable v. Varela*, 115 Ariz. 222, 564 P.2d 911 (Ct.App. 1977); *Bycom Corp v. White*, 187 Ga.App. 759, 371 S.E.2d 233 (1988); *Kennedy v. Tri-City Health Ctr.*, 590 N.E.2d 140 (Ind.Ct. App.1992); *Koop v. Bailey*, 502 N.E.2d 116 (Ind.Ct.App.1986); *Moreno v. Marrs*, 102 N.M. 373, 695 P.2d 1322 (Ct.App.1984).

In fact, only two jurisdictions, Oregon by court decision, and Minnesota by statute, have abandoned the policemen and firemen's rule in favor of the general duty of reasonable care. *See Christensen v. Murphy*, 296 Or. 610, 678 P.2d 1210 (1984); Minn.Stat. § 604.06 (1994).

■ After considering the authority from other jurisdictions, and recent Tennessee decisions, we are of the opinion that the policemen and firemen's rule constitutes a logical and sound application of the tort principle of duty.[2] As we have stated on numerous occasions, the existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts*, § 37 at 236 (5th ed.1984) (hereafter *Prosser*, § —— at p. ——.); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991).

We have also said that in determining the existence or nonexistence of a legal duty, a court must consider,

> ... whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law is to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court....

*Bradshaw v. Daniel*, 854 S.W.2d at 870, quoting, *Lindsey v. Miami Development Corp.*,

689 S.W.2d 856, 859 (Tenn.1985), quoting *Prosser*, § 37 at 236. In general, we have recognized that

> [i]mposition of a legal duty ... reflects **society's contemporary policies and social requirements** concerning the right of individuals and the general public to be protected from the acts or conduct of another.

*Bradshaw v. Daniel*, 854 S.W.2d at 870 (emphasis added).

Applying these fundamental concepts, we observe that the preservation of organized society requires the presence and protection of police officers. Situations requiring the presence of police, although commonplace and inevitable, are also routinely dangerous. Public policy considerations, as well as societal expectations, militate against allowing police officers to institute tort actions against a citizen for an injury resulting from a risk the officer is trained and hired to confront. Simply stated, societal policies do not support imposition of a duty of reasonable care upon a citizen calling for police assistance.

■ Rather, public policy is served when citizens are encouraged to summon aid from police, regardless of their negligence, and are assured that the compensation for injuries sustained by police in the line of duty will be borne by the public as a whole. *See Pottebaum v. Hinds*, 347 N.W.2d at 645; *Flowers v. Rock Creek Terrace Ltd. Partnership*, 308 Md. 432, 520 A.2d 361 (1987); *Kreski v. Modern Wholesale Elec. Supply*, 415 N.W.2d at 185. Accordingly, we conclude as a matter of public policy that a citizen owes no duty of reasonable care to police officers responding to that citizen's call for assistance and join the majority of other jurisdictions who have reaffirmed the policemen and firemen's rule on public policy grounds.

■ A principal exception to the rule that has developed in other states is relevant to the disposition of this case. That exception provides that when a police officer is injured by the intentional, malicious, or reck-

---

**2.** Of course, as we discussed in *Perez v. McConkey, supra*, primary assumption of risk, cited by a number of courts as a justification for the policemen and firemen's rule is, in reality, a finding that no duty is owed. Therefore, our holding herein is consistent both with *Perez*, and those courts relying upon "primary assumption of risk."

less acts of a citizen, the action is not barred by the policemen and firemen's rule. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn.1992) (defining terms). The rationale for the exception is that police officers are not employed to submit to intentional, reckless, or malicious injury. Moreover, recognition of moral fault as a component of public policy is a common principle of tort law. *Prosser*, § 8 and § 37. Exposing the individual wrongdoer to liability will not only act as a deterrent to others, but it will also relieve the public of the financial burden attributable to the intentional, individual wrongdoer. Prohibiting recovery against one who intentionally, maliciously or recklessly causes injury to police officers stretches the policy considerations supporting the policemen and firemen's rule beyond logical and justifiable limits. As a result, the majority of courts considering the issue have concluded that either by action or inaction, a citizen has a duty to refrain from intentionally, maliciously, or recklessly causing injury to police officers responding to the citizen's call for assistance. *Grable v. Varela, supra; Sanderson v. Freedom Sav. & Loan Ass'n.*, 548 So.2d 221, 222 (Fla.1989); *Lang v. Glusica*, 393 N.W.2d 181 (Minn.1986); *Buchanan v. Prickett & Son, Inc.*, 203 Neb. 684, 279 N.W.2d 855, 858–59 (1979); *Migdal v. Stamp, supra; Mahoney v. Carus Chemical Co. Inc., supra; Krueger v. City of Anaheim*, 130 Cal.App.3d 166, 181 Cal.Rptr. 631 (Cal. Ct.App.1982); *Kennedy v. Tri–City Health Ctr., supra; Lambert v. Schaefer*, 839 S.W.2d 27 (Mo.Ct.App.1992); *Ballou v. Nelson*, 67 Wash.App. 67, 834 P.2d 97, 100 (1992); 2 F. Harper & F. James, *Law of Torts*, § 27.14, 1504 (1956); Best, § 4.20[3], p. 4–78. We agree that the exception is well-reasoned and based upon sound public policy considerations and adopt it in Tennessee.

■ Because the record in this case contains no evidence to establish that the plaintiffs' injuries resulted from the defendant's intentional, malicious, or reckless misconduct, the policemen and firemen's rule bars recovery. Here, it is undisputed that the defendant informed the dispatcher that her husband had been violent in the past, had recently been drinking, and possessed hunting weapons. The dispatcher, in turn, informed the plaintiffs, who were the responding officers. The plaintiffs, however, alleged in an affidavit that the defendant failed to inform them that three years earlier, in the context of a domestic dispute, her husband had threatened to kill any police officers who came onto his property. At most, the defendant's failure to relay this information amounts to only simple negligence and is not sufficient to support a finding of intentional, malicious, or reckless misconduct.

### CONCLUSION

We reaffirm the policemen and firemen's rule which precludes firefighters and police officers from recovering damages for injuries arising out of risks peculiar to their employment. We also conclude, however, that a duty of care is owed where police officers are injured by a citizen's intentional, malicious, or reckless misconduct. Because the record in this case contains no evidence to establish that the plaintiffs' injuries resulted from the defendant's intentional, malicious, or reckless misconduct, the Court of Appeals' decision is affirmed, as modified. Costs of this appeal are taxed equally to the plaintiffs, James Carson and Matthew Baird.

DROWOTA, REID and BIRCH, JJ., and O'BRIEN, Special Judge, concur.