# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 2000 Session

## BRENDA D. ESTES, ET AL. v. SANDRA H. PEELS, ET AL.

### Appeal from the Circuit Court for Jefferson County
No. 12,587     Ben W. Hooper, II, Judge

### filed September 21, 2000

### No. E1999-00582-COA-R3-CV

This case arises out of a motor vehicle accident that occurred when a vehicle exited a manufacturing plant's parking lot and collided with the plaintiff's vehicle on a public highway. Brenda D. Estes and her husband sued the owner of the plant for negligence. The trial court granted the plant owner summary judgment. We hold that, under the circumstances of this case, the plant owner did not owe a duty of care to the plaintiff and therefore affirm the grant of summary judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J. and D. MICHAEL SWINEY, J., joined.

Stanley F. Roden and Jody S. Rodenborn, Knoxville, Tennessee, for the appellants, Brenda D. Estes and Richard W. Estes.

Gene P. Gaby, Greeneville, Tennessee, for the appellee, Magnavox Corporation and/or North American Philips d/b/a Philips Consumer Electronics Corporation.

### OPINION

#### I. *Facts*

On December 10, 1991, the plaintiff Brenda D. Estes was driving eastbound on Old Andrew Johnson Highway near the entrance to a manufacturing plant belonging to the defendant Magnavox Corporation and/or North American Philips, doing business as Philips Consumer Electronics Corporation ("Philips"). Sandra H. Peels, an employee of Philips, had just finished her work shift and was attempting to exit the parking lot of the plant to proceed westbound on the highway. At the point where Peels exited, the parking lot is wide enough to allow two vehicles to exit simultaneously. Peels was on the right side of this exit, with a pickup truck parallel to her vehicle on the left. Estes

was approaching the plant from Peels' left when Peels pulled out onto Old Andrew Johnson Highway, resulting in a collision with Estes.

Ms. Estes and her husband, Richard W. Estes, filed this action, alleging that both Peels and Philips were negligent.[1] Specifically, the plaintiffs charged that Philips had failed to adequately control the access of its employees to the highway, which allegedly resulted in employees being able to enter the highway "without visual sighting of oncoming traffic." The plaintiffs charged that Philips had prior notice or knowledge of this hazardous condition but had failed to take corrective measures to restrict access onto the public highway.

Philips moved for summary judgment. In support of its motion, Philips submitted the affidavit of Bill J. Petre. In his capacity as manager of manufacturing services at the plant, Petre was responsible for all maintenance, industrial engineering, and manufacturing engineering, including the plant's layout, access to the plant, and traffic flow patterns on the premises. In his affidavit, Petre stated that the exit at which the accident occurred had been there since he began working at the plant in 1957. He stated that he knew of only one other accident at that location during that time, and that accident had involved an intoxicated driver driving eastbound on the highway who lost control and ran into a concrete abutment. In his supplemental affidavit, Petre stated that over the past 40 years, the plant had employed an average of 800 employees per year and that he could not recall any other accidents involving vehicles attempting to enter or exit the plant.

In response to Philips' motion, the plaintiffs submitted two affidavits. First, they submitted the affidavit of Britt Farrar, a resident of Jefferson County for a number of years, who stated that he had personally observed the traffic leaving the Philips plant at the end of the afternoon shift on his way to and from work. In his opinion, the traffic situation at the plant "has been a very dangerous situation for a great number of years." He stated that he has observed vehicles pull out from the plant "in mass with little regard for oncoming traffic" and that "[t]here are no traffic controls of any type which would limit the ability of automobiles exiting the Philips Plant from pulling out abreast of each other." The plaintiffs also submitted the affidavit and deposition of Dr. Stephen Richards, an engineer and professor of civil and environmental engineering. Dr. Richards opined as follows:

> 1. The plant access driveways and parking lot circulation patterns are not designed and operated in accordance with recognized safety principles and guidelines, compromising the safety of the motorists using these facilities and the adjoining public roads.

> 2. The lack of adequate traffic controls at the access/egress points serving the Philips plant parking area results in a safety hazard for motorists exiting and entering the plant, as well as motorists on Old Andrew Johnson Highway.

---

[1] The plaintiffs eventually settled their suit against Peels, and that action is not a subject of this appeal.

3. Conflicts[2] between exiting vehicles from the plant and vehicles on Old Andrew Johnson Highway are very common during the afternoon shift change; these conflicts are evidence of the deficient access design and lack of traffic control. The high rate of vehicle conflicts is also evidence of the increased likelihood of accidents.

Richards opined that "the management of the Philips plant knew or should have known of this dangerous condition and taken steps to correct this traffic situation." Plaintiffs also relied upon Bill Petre's deposition to prove that Philips knew of the parking lot's condition. In his deposition, Petre admitted that two cars could exit the lot and enter the highway at the same time and that this situation had existed for a long time.

The trial court granted Philips' motion for summary judgment, finding that the legal cause of the accident was Peels' conduct in pulling into the path of Ms. Estes' vehicle and that "there were no other legal causes." The trial court found that neither affidavit submitted by the plaintiffs created a genuine issue of material fact. The trial court also noted the plaintiffs' "total failure" to establish that Philips was on notice of a dangerous situation existing at the site of the accident. The court also found that the plaintiffs failed to "show that Philips could have reasonably foreseen that the plaintiffs would be injured in the manner they were" and that there had "been no showing that Philips was negligent." This appeal followed.

## II. *Standard of Review*

Our standard of review of a grant of summary judgment is well-settled. Our inquiry involves only a question of law, with no presumption of correctness as to the trial court's decision. *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993). The moving party -- in this case, Philips -- has the initial burden of producing competent, material evidence reflecting that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. *See Byrd,* 847 S.W.2d at 211. This burden may be met by affirmatively negating an essential element of the nonmoving party's claim or by conclusively establishing an affirmative defense. *Id.* at 215 n.5.

If the moving party successfully carries its burden, the burden then shifts to the nonmoving party to establish that there are disputed material facts creating at least one genuine issue that must be resolved by a trier of fact. *Id.* at 215. The nonmoving party may contradict the factual predicate of the summary judgment motion by presenting competent and admissible evidence by way of affidavits or discovery materials. *Id.* at 211.

In evaluating the evidence in the summary judgment context, we must view the evidence in the light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor

---

[2]Dr. Richards explained in his deposition that "conflicts" is a traffic engineering term meaning "potential for collision."

of that party. *Id.* at 210. Summary judgment is appropriate only when there are no genuine issues of material fact and when the undisputed material facts entitle the moving party to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd,* 847 S.W.2d at 211.

### III. *Analysis*

To successfully assert a negligence claim, a plaintiff must establish the following elements:

> (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation.

*Rice v. Sabir,* 979 S.W.2d 305, 308 (Tenn. 1998).

We focus first upon whether Philips owed a duty to the plaintiffs in this case; for without the establishment of a duty, there can be no negligence. *Doe v. Linder Constr. Co.,* 845 S.W.2d 173, 178 (Tenn. 1992). Whether a defendant owes a duty to the plaintiff is a question of law for the court. *Carson v. Headrick,* 900 S.W.2d 685, 690 (Tenn. 1995).

"Duty" has been defined as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995). In determining whether a duty exists, we must consider whether "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others -- or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Bradshaw v. Daniel,* 854 S.W.2d 865, 869-70 (Tenn. 1993) (quoting *Lindsey v. Miami Dev. Corp.,* 689 S.W.2d 856, 858-59 (Tenn. 1985)). A duty to act with due care arises when a risk is unreasonable, that is, "if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall,* 913 S.W.2d at 153. The Supreme Court has set forth several factors to be considered in determining whether a risk is unreasonable, including

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Id.* After consideration of these factors, we must then balance "the foreseeability and gravity of the potential harm against the burden imposed in preventing that harm." *Coln v. City of Savannah,* 966

S.W.2d 34, 39 (Tenn. 1998); *see also Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000); *Rice,* 979 S.W.2d at 308; *McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d 891, 902 (Tenn. 1996); *McCall,* 913 S.W.2d at 153.

The Supreme Court's decisions regarding the existence of a duty on the part of an owner or occupier of premises have consistently utilized this balancing approach.[3] In *McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d 891 (Tenn. 1996), a customer was raped and killed after being abducted from a shopping center parking lot. The plaintiff alleged that the owner of the shopping center and its anchor tenant were negligent in failing to provide security in the lot. *Id.* at 894. The trial court and the Court of Appeals held that a business owner owes no duty to protect customers against the criminal acts of third parties unless the owner knows that the acts are occurring or are about to occur. *Id.* at 895. The Supreme Court reversed, holding that a premises owner or occupier may owe a duty to protect customers from crimes committed by third parties on its premises if the business knows or should have known that criminal acts against its customers are reasonably foreseeable. *Id.* at 902. The Court concluded that the proof would support a finding that the risk of injury to the decedent was reasonably foreseeable, given the recent and numerous reports of crime on and near the defendants' premises. *Id.* at 904. The Court directed the trial court upon remand to determine whether imposing a duty to take reasonable measures to protect patrons from the criminal acts of third persons would place "an onerous burden" on the defendants. *Id.* at 904. If the burden was not found to be "onerous," the Supreme Court directed the trial court to consider whether the burden outweighs the foreseeability and gravity of the potential harm, so as to preclude an imposition of a duty on the part of the defendants. *Id.*

*Coln v. City of Savannah,* 966 S.W.2d 34 (Tenn. 1998), was a consolidation of two cases. In the first case, the plaintiff was injured when she tripped over the edge of a sidewalk that was slightly higher than the adjoining brick pavers. *Id.* at 37. The Court of Appeals concluded that given the open and obvious nature of the condition, the plaintiff was at least 50% responsible for her injuries. *Id.* at 38. In the second case, the plaintiff, who was a guest in the defendants' home, was injured when her knee went into an opening in the defendants' deck. *Id.* The Court of Appeals affirmed a grant of summary judgment on the basis that the opening was open and obvious. *Id.* The Supreme Court reversed the Court of Appeals in both cases, holding that a premises owner or occupier has a duty to exercise due care in regard to social guests and business invitees on its premises, and the fact that a danger was "open and obvious" does not automatically relieve a premises owner or occupier from that duty. *Id.* at 46. Instead, the Court held that "the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm." *Id.* at 43. Applying these principles, the Court concluded that the defendants in both cases owed a duty of care, despite the

---

[3]We acknowledge that Justice Holder has criticized the balancing approach adopted by the Court to analyze the issue of duty. Justice Holder has noted that the weighing of these factors is normally a function for the jury in determining whether a party was negligent. *See Staples,* 15 S.W.3d at 93 (Holder, J., concurring); *Rice,* 979 S.W.2d at 310 (Holder, J., dissenting). To date, a majority of the High Court has rejected Justice Holder's approach.

"open and obvious" nature of the condition, because the risk of harm was unreasonable and outweighed the burden imposed in protecting against the harm. *Id.* at 44, 46.

In *Rice v. Sabir,* 979 S.W.2d 305 (Tenn. 1998), a contractor who was hired to trim trees and clean gutters was injured when he slipped and fell as a result of mildew on the homeowner's roof. The trial court granted the homeowner summary judgment on the basis that the condition of the roof was obvious and readily observable. *Id.* at 308. The Supreme Court, relying upon *Coln,* found that "merely labeling the injury-causing condition 'open and obvious' does not end the inquiry as to duty." *Id.* at 310. After weighing the various factors, the Court concluded that the condition was not one that the homeowner knew about or could have discovered through the exercise of due care; accordingly, the Court held "that it is not probable that the injury was reasonably foreseeable and that no action of [the homeowner] could more probably than not have prevented the injury." *Id.*

Most recently, the Supreme Court applied the balancing approach in *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83 (Tenn. 2000). In that case, the plaintiff had advised two department store employees that she was being followed. *Id.* at 86. The plaintiff then left the store without incident. *Id.* She returned to the store a short time later, however, and was assaulted and abducted. *Id.* The defendants argued that the plaintiff's abduction was not foreseeable because she did not alert the mall's security and she reentered the mall after leaving safely. *Id.* at 90. The Supreme Court disagreed, finding that the exchange between the plaintiff and the two store employees triggered a duty on the part of the defendants to protect the plaintiff from the abduction. *Id.* Upon balancing the relevant factors, the Court concluded that "the gravity of the foreseeable harm was great and that alternative conduct on the part of the defendants, which at the least would have included calling security, was readily available and would not have unduly burdened the defendants." *Id.* at 91.

The foregoing cases involve the liability of an owner or occupier of property for a dangerous condition on the premises that resulted in an injury to a plaintiff *while on or beginning on the premises*. In the instant case, however, the plaintiffs seek to impose a duty on the landowner to protect a plaintiff *from an accident that occurred off the premises*. Tennessee has recognized that under certain circumstances, an owner or occupier of premises may owe a duty to persons on a public thoroughfare adjacent to the premises. In *De Ark v. Nashville Stone Setting Corp.,* 38 Tenn. App. 678, 279 S.W.2d 518 (Tenn. Ct. App. 1955), the plaintiff was injured when she fell into an excavation on the defendant's property which was adjacent to a public sidewalk. This court found that the defendant owed a duty of care to the plaintiff "to use reasonable care not to endanger such passage, by excavations or other hazards so close to the public way as to make it unsafe to persons using it with ordinary care." *Id.* at 521. The court went on to hold as follows:

> The general rule is that one who creates or maintains, on premises adjacent to a highway, a condition of such character that danger of injury therefrom to persons lawfully using the highway may or should, in the exercise of ordinary care, be foreseen or apprehended is under the duty or [sic] exercising reasonable care, by means of guards, barriers, or otherwise, to prevent such injury,....

*Id.* (quoting 25 Am.Jur. *Highways* § 530).

Section 368 of the Restatement (Second) of Torts states a similar duty:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
> (a) are traveling on the highway, or
> (b) foreseeably deviate from it in the ordinary course of travel.

Both *De Ark* and the Restatement contemplate a situation where a plaintiff comes into contact with a condition on the owner's premises that causes the injury. In the instant case, however, the plaintiff did not enter onto Philips' property, nor did she come into contact with any condition on the property. We must determine, by using the balancing approach set forth in the cases discussed above, whether some condition on Philips' property created an unreasonable risk of harm to the plaintiff despite this lack of contact.

Philips' parking lot is connected to the public highway by several driveways. The driveway from which Peels exited was wide enough to allow two vehicles to exit simultaneously. The plaintiffs contend that this condition results in vehicles being able to pull out "without any visual sighting of oncoming traffic." The plaintiffs' argument, as it relates to the facts of this case, relies upon the assumption that a vehicle on the right-hand side of the driveway would not be able to see traffic on the highway coming from the left if a vehicle pulled up on the left-hand side of the driveway. The plaintiffs' theory, however, is not supported by the evidence in this case. There is no proof in the record to indicate that Ms. Peels' vision was blocked -- either by another vehicle or by any structure on the property -- when she exited the driveway.[4] Thus, the fact that Peels pulled out in front of the plaintiff's vehicle is not attributable to any condition on Philips' property; Peels simply failed to yield to oncoming vehicles, in violation of her statutory duty. *See* T.C.A. § 55-8-131 (1998). We conclude that there is nothing dangerous about the defendant's parking lot absent the failure of a driver to obey traffic laws and yield to oncoming traffic. Thus, the question becomes whether it was foreseeable to Philips that Peels would violate her statutory duty when exiting the plant. Upon reviewing the record, we conclude that such conduct was not foreseeable. Philips' manager of manufacturing services, Bill Petre, testified that over the past 40 years, the plant had employed an average of 800 employees a year and that there had never been an accident involving one of its employees leaving the plant. There is also no evidence to suggest that Philips was ever

---

[4]In support of her contention that Peels' vision was blocked, the plaintiffs cite Ms. Estes' deposition in which she asserts that she could see only the front end of Peels' vehicle before it pulled out onto the highway. The fact that Ms. Estes could only see the front end of Peels' vehicle, however, does not shed any light on what Peels could or could not see from her vantage point.

advised by anyone that the situation was dangerous or that there was a potential for this type of accident to occur. Thus, we conclude that it was not foreseeable to Philips that a person would attempt to exit the plant without yielding to oncoming traffic.

Even if such conduct were foreseeable, however, we find that imposing a duty on Philips to prevent a driver from pulling out on a highway without yielding to oncoming traffic would be an onerous burden. Philips could not, without governmental approval, install lights or signs upon the highway to control traffic exiting its facility. The responsibility for the placement and maintenance of traffic controls on the public way rests with the government, not a private entity such as Philips. *See* **Gorman v. Earhart,** 876 S.W.2d 832, 836 (Tenn. 1994) (holding Manual on Uniform Traffic Control Devices applies only to public authorities and those entities with a contractual relationship with public authorities for the construction, operation, or maintenance of public roads and highways); *see also* T.C.A. § 55-8-113 (1998) (prohibiting the display of any unauthorized sign or device on a highway attempting to direct traffic). Moreover, to prevent a vehicle temporarily blocking another vehicle's visibility while exiting the plant would essentially require the plant to have an exit that allows only one vehicle to leave the premises at a time. For a facility that employs several hundred people, this would simply be impracticable. Finally, we note that despite any measures Philips could have taken to limit the number of vehicles exiting its premises, Philips still could not have prevented the plaintiff's injuries. Philips had no control over the instrumentality that caused her injuries; it could not prevent Peels from failing to yield to oncoming traffic as she entered the highway.

We have considered the affidavits and the deposition submitted by the plaintiffs in opposition to the defendant's motion for summary judgment. The admissible evidence, *see* **Byrd**, 847 S.W.2d at 211, contained in these documents does not establish a duty of care running from the defendant to these plaintiffs.

In sum, we hold that Philips owed no duty to the plaintiffs in this case. We therefore affirm the trial court's grant of summary judgment.

IV. *Conclusion*

The judgment of the trial court granting Philips summary judgment is affirmed. All other issues on appeal are pretermitted. This case is remanded for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellants.

_____
CHARLES D. SUSANO, JR., JUDGE