IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 7, 2006 Session

## DONALD JAMISON v. HARRELL ULRICH, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 04-C-1258     W. Neil Thomas, III, Judge**

---

**No. E2005-01153-COA-R3-CV - FILED FEBRUARY 22, 2006**

---

The issue presented in this case is whether the policemen and firemen's rule applies to an animal control officer who was bitten by a Doberman pinscher while performing the duties of his employment. The plaintiff, an animal control officer for the Chattanooga Police Department, was bitten when, in the course and scope of his employment, he attempted to take possession of the defendants' dog at their home. The plaintiff sued the defendants for compensatory damages, claiming that they were negligent in failing to warn him about the dangerous nature of the dog. The trial court granted the defendants' motion for summary judgment upon its determination that the dog's owners owed no duty to the plaintiff under the circumstances pursuant to the policemen and firemen's rule which precludes police officers and firefighters from recovering for injuries arising out of risks peculiar to their employment. Upon review, we find that the dog's owners owed no duty of ordinary care to the animal control officer and therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

John W. McClarty, Chattanooga, Tennessee, for the appellant, Donald Jamison.

Laura Beth Rufolo and Stacy Lynn Archer, Chattanooga, Tennessee, for the appellees, Harrell and Karen Ulrich.

**OPINION**

*I. Background*

The appellant, Donald Jamison, is employed as an animal control officer with the Animal Services Division of the City of Chattanooga Police Department. In April of 2004, Officer Jamison went to the home of the appellants, Harrell and Karen Ulrich, to take possession of their dog, a

Doberman pinscher.  As Officer Jamison was attempting to place the dog in his vehicle, the dog bit him.

Thereafter, Officer Jamison filed a complaint against the Ulrichs in the Circuit Court for Hamilton County.  The complaint charges the Ulrichs with negligence based upon the following allegations:

> 1. Said Defendants did not warn the plaintiff of the dangerous nature of their dog.
>
> 2. Said Defendants knew or should have known that their dog would attack strangers but failed to warn the Plaintiff of the danger.
>
> 3. Said Defendants kept and maintained a dangerous and unstable animal on their premises and failed to give notice of the danger to persons coming in contact with this animal.

The complaint further avers that, as a result of the Ulrichs' negligence, Officer Jamison suffered serious personal injuries and emotional distress and requests compensatory damages in the amount of $150,000.

The Ulrichs filed a motion for summary judgment upon grounds that Officer Jamison was precluded from recovering damages for injuries arising out of risks peculiar to his employment pursuant to the policemen and firemen's rule.[1]  In response to the Ulrichs' motion for summary judgment, Officer Jamison asserted that the policemen and firemen's rule did not apply to an animal control officer.

The trial court entered summary judgment in favor of the Ulrichs, stating as follows:

> The Fireman's and Policeman's Rule has been adopted in Tennessee, and the most recent pronouncement is contained in Carson v. Headrick, 900 S.W.2d 685 (Tenn. 1995).  A threshold question in the consideration of this Rule is the nature of the duty owed by the Defendants to the Plaintiff.  Resolution of that issue is a question of law.  Carson v. Headrick, supra, at 690.  If, as a matter of law, no duty is owed to the Plaintiff, summary judgment is appropriate.  As pointed out by the Court in Carson, resolution of that issue was formerly based upon the status of the officer in relation to the

---

[1] The Ulrichs also requested summary judgment upon grounds that they had surrendered the dog to Animal Services prior to the attack and therefore, ownership, a requisite element in a suit for dog bite, could not be shown.  However, the trial court determined that was not a proper basis for summary judgment.  The trial court's decision in that regard is not contested in this appeal.

landowner. Determination of the duty on the basis of status was then abandoned and replaced with public policy considerations. As the Court in <u>Carson v. Headrick</u> stated:

> "Situations requiring the presence of police, although commonplace and inevitable, are also routinely dangerous. Public policy considerations, as well as societal expectations, militate against allowing police officers to institute tort actions against a citizen for an injury resulting from a risk the officer is trained and hired to confront." 900 S.W.2d at 690

> If one looks at the issue in terms of danger and training, then it is easily said that an officer with the Animal Services Division is trained to deal with animals and because of that training and danger the only duty imposed upon the owner is not to act intentionally or recklessly with respect to the officer. In this record there is no evidence of intentional or reckless conduct. Accordingly, summary judgment is appropriate on this ground.

Officer Jamison appeals summary judgment in favor of the Ulrichs.

## II. Issue presented

The sole issue we address in this case is whether the trial court erred in granting the Ulrichs' motion for summary judgment upon grounds that Officer Jamison's suit against them was precluded under the policemen and firemen's rule.

## III. Standard of Review

Summary judgments enable courts to conclude cases that can and should be resolved on dispositive legal issues. *See Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); *Airport Props. Ltd. v. Gulf Coast Dev., Inc.,* 900 S.W.2d 695, 697 (Tenn. Ct. App. 1995). They are appropriate only when the facts material to the dispositive legal issues are undisputed. Accordingly, they should not be used to resolve factual disputes or to determine the factual inferences that should be drawn from the evidence when those inferences are in dispute. *See Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 33 (Tenn. 1988).

To be entitled to a summary judgment, the moving party must demonstrate that no genuine issues of material fact exist, and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Byrd v. Hall,* 847 S.W.2d at 210; *Planet Rock, Inc. v. Regis Ins. Co.,* 6 S.W.3d 484, 490 (Tenn. Ct. App. 1999). A summary judgment should not be granted, however, when a genuine dispute exists with regard to any material fact. *Seavers v. Methodist Med. Ctr.,* 9 S.W.3d 86, 97

(Tenn. 1999); *Hogins v. Ross,* 988 S.W.2d 685, 689 (Tenn. Ct. App. 1998). Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50-51 (Tenn. 1997); *Aghili v. Saadatnejadi,* 958 S.W.2d 784, 787 (Tenn. Ct. App. 1997). Tenn. R. Civ. P. 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d at 210; and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). A party seeking a summary judgment must demonstrate the absence of any genuine and material factual issues. *Byrd v. Hall,* 847 S.W.2d at 214.

When the party seeking summary judgment makes a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). The non-moving party may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) provided by Rule 56.06 showing that there is a genuine issue for trial. If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party. Tenn. R. Civ. P. 56.06.

Summary judgments do not enjoy a presumption of correctness on appeal. *See Nelson v. Martin,* 958 S.W.2d 643, 646 (Tenn. 1997); *City of Tullahoma v. Bedford County,* 938 S.W.2d 408, 412 (Tenn. 1997). Accordingly, when we review a summary judgment, we view all the evidence in the light most favorable to the non-movant, and we resolve all factual inferences in the non-movant's favor. *See Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox County Bd. of Educ.,* 2 S.W.3d 927, 929 (Tenn. 1999). A summary judgment will be upheld only when the undisputed facts reasonably support one conclusion - that the moving party is entitled to a judgment as a matter of law. *See White v. Lawrence,* 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995).

### *IV. Applicability of Policemen and Firemen's Rule to an Animal Control Officer*

The policemen and firemen's rule precludes firefighters and police officers from recovering damages for injuries arising out of risks peculiar to their employment. This rule was first adopted in Tennessee in the 1915 decision of *Burroughs Adding Machine Co. v. Fryar*, 179 S.W. 127 (Tenn. 1915) (a police officer injured as a result of a business owner's negligence could not recover damages). The rule was most recently reaffirmed by the Tennessee Supreme Court in *Carson v. Headrick*, 900 S.W.2d 685 (Tenn. 1995), wherein the Court ruled that sound public policy considerations supported the continuation of the rule based on the nature of the duty of police officers and the relationship between the officers and the public they protect.

Officer Jamison seeks to differentiate an animal control officer from a policeman or a fireman. He contends that the policemen and firemen's rule referenced by the trial court does not apply to an animal control officer who, in the course and scope of his employment, is bitten by a dog. Officer Jamison's argument is set forth as follows:

> The rule as reaffirmed stated by the Court in <u>Carson v. Hendrick</u> [sic], 900 S.W.2d 685 (Tenn. 1995), precludes <u>firefighters</u> and <u>police officers</u> from recovering damages for injuries arising out of risks peculiar to their employment.
>
> The Court in <u>Carson</u> citing <u>Berko v. Freda</u>, 459 A.2d 663 (1983), made mention that both (police officers and firefighters are paid to confront crises and allay damages created by an uncircumspect citizenry, a circumstance that serves to distinguish firefighters and police officers from most other public employees. Citizens summon police and firefighters to confront danger. Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront danger that will arise but to perform some other public function that may incidentally involve risk.
>
> The Appellant's position as an officer in the Animal Services Division may involve some risk but it is not one whereby he is called upon to constantly confront danger, as a police officer or a firefighter.
>
> In <u>Bridges v. City of Memphis</u>, 952 S.W.2d 841 (Tenn. App. 1997), the Court citing <u>Carson</u>, said for public policy reasons, police officers and fire fighters in Tennessee are not permitted to sue members of the public for injuries that arise out of risks peculiar to their employment.
>
> This rule has been limited to police officers and firefighters and has not been extended to other public employment posts. In fact, the court made note of this in <u>Carson</u> as cited above. Since the Appellant is not a police officer or a firefighter, this rule should not apply to shield the Appellees from liability in this case.

As previously noted, the Tennessee Supreme Court in *Carson* reaffirmed the policemen and firemen's rule upon public policy grounds. Under the facts in that case, the defendant called sheriff's department officers to escort her to her home because her husband had a propensity for violence, had been drinking, had guns in the house and had threatened to "destroy everything" if she was not home by a certain time. The officers accompanied the defendant's vehicle in their cruisers, and as they approached her house, her husband opened fire wounding both officers. In their subsequent suit

-5-

against the defendant, the officers asserted that the defendant was negligent because she failed to advise them of her actual knowledge of threats made by her husband and of her actual knowledge that her husband possessed the scoped rifle that he used in the shooting. The Supreme Court ruled that summary judgment in favor of the defendant was appropriate under the policemen and firemen's rule, noting the relationship of the rule to the matter of duty:

> After considering the authority from other jurisdictions, and recent Tennessee decisions, we are of the opinion that the policemen and firemen's rule constitutes a logical and sound application of the tort principle of duty. As we have stated on numerous occasions, the existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court.
>
> We have also said that in determining the existence or nonexistence of a legal duty, a court must consider,
>
>> ... whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others -- or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law is [sic] to be determined by reference to the body of statutes, rules, principles, and precedents which make up the law; and it must be determined only by the court ....
>
> In general, we have recognized that
>
>> [i]mposition of a legal duty ... reflects **society's contemporary policies and social requirements** concerning the right of individuals and the general public to be protected from the acts or conduct of another.
>
> Applying these fundamental concepts, we observe that the preservation of organized society requires the presence and protection of police officers. Situations requiring the presence of police, although commonplace and inevitable, are also routinely dangerous. Public policy considerations, as well as societal expectations, militate against allowing police officers to institute tort actions against a citizen for an injury resulting from a risk the officer is trained and hired to confront. Simply stated, societal policies do not support imposition of a duty of reasonable care upon a citizen calling for police assistance.

Rather, public policy is served when citizens are encouraged to summon aid from police, regardless of their negligence, and are assured that the compensation for injuries sustained by police in the line of duty will be borne by the public as a whole. Accordingly, we conclude as a matter of public policy that a citizen owes no duty of reasonable care to police officers responding to that citizen's call for assistance and join the majority of other jurisdictions who have reaffirmed the policemen and firemen's rule on public policy grounds.

*Carson*, 900 S.W.2d at 690 (citations and footnotes omitted) (emphasis in original).

Officer Jamison offers no persuasive reason for distinguishing between police officers and animal control officers with respect to applicability of the policemen and firemen's rule and the duty the public should bear to individuals employed in those positions. He states that police departments are maintained in "anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront danger that will arise but to perform some other public function that may incidentally involve risk," and he notes that the position of animal control officer "may involve some risk but it is not one whereby he is called upon to constantly confront danger."

We agree that most public employment posts are not created to confront danger. We do not necessarily disagree that policemen and firemen are called upon to confront danger more frequently than are animal control officers. However, in our view, the salient question is whether the danger encountered by the employee is a danger that can be reasonably expected given the nature of the position of employment. While it is reasonable for a secretary employed in the mayor's office to expect that he or she will not be confronted with physical danger, an animal control officer cannot maintain the same expectation. Officer Jamison's job, as the title "animal control officer" itself implies, is to exert control over animals that are out of control in one sense or another. In fulfilling the duties of his job, Officer Jamison must anticipate that he will, from time to time, be exposed to aggressive animals that are capable of inflicting the sort of injuries he sustained in this case. Although it is not reasonable to expect that an animal control officer will confront the same dangers that a police officer typically confronts, it is reasonable to expect that he will confront the danger of being bitten by an aggressive animal. It is not disputed that, as a graduate of the Chattanooga Police Department's Animal Services Division Academy, Officer Jamison has received special training to deal appropriately with that very danger, just as a police officer has received training to deal with the dangers he or she is likely to encounter.

The same public policy consideration noted by the Court in *Carson* dictates that animal control officers be precluded from filing negligence actions against the citizenry for injuries arising out of risks peculiar to their employment. In part at least, animal control officers are employed to

preserve public safety by subduing animals that pose a threat of harm. As in matters necessitating the involvement of a police officer, public policy is served when a citizen is encouraged to summon an animal control officer for aid, regardless of the citizen's negligence, and when it is assured that any injuries sustained by the animal control officer in the line of duty will be borne by the public as a whole.

Under the facts presented in this case, it is our determination that, consistent with the ruling in *Carson*, the Ulrichs owed no duty of ordinary care to Officer Jamison, and therefore they cannot be held liable for his injuries.

We note that in *Carson,* the Tennessee Supreme Court adopted an exception to the policemen and firemen's rule that allowed recovery for a policeman or firefighter who is injured by the intentional, malicious, or reckless acts of a citizen. It is our opinion that the exception to the policemen and firemen's rule also applies to animal control officers. However, the exception does not apply in this case because the record contains no evidence of any intentional, malicious or reckless acts.

For the foregoing reasons, we affirm the judgment of the trial court and remand for whatever further action may be necessary consistent with this opinion. Costs of appeal are adjudged against the appellant, Donald Jamison.

_____

SHARON G. LEE, JUDGE